IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

C. DOV SACKS
501 Monastery Avenue
Philadelphia, PA  19128,

                    Plaintiff,

        vs.

DJA AUTOMOTIVE LLC d/b/a
KIA OF WEST CHESTER
326 Westtown Road
West Chester, PA  19382,

               Defendant.

CIVIL ACTION NO.

## **COMPLAINT**

## I.  **INTRODUCTION**

1.     This is an "odometer rollback" and consumer fraud case against a local car dealer. It is brought pursuant to Subchapter IV of the federal Motor Vehicle Information and Cost Savings Act, 49 U.S.C. § 32701 et seq. (i.e. "the Federal Odometer Act" or "FOA"), Pennsylvania's analogous state odometer act, Pennsylvania's consumer protection law, and breach of warranty.

2.     Both the Federal Odometer Act and its state-law counterpart prohibit an automobile seller, like Defendant, from making false representations about the mileage of a motor vehicle.

3.     Defendant car dealership repeatedly misrepresented in advertisements and sales pitches that the Kia Optima auto being offered to Plaintiff was "low mileage", when the actual mileage of the car had been rolled back by nearly 30,000 miles.  Upon selling the Optima to

1

Plaintiff, Defendant completed an odometer disclosure statement listing the bogus "low" mileage amount when it knew or should have known that the car had many more miles on it.

## II.      JURISDICTION

4.      Jurisdiction of this Court arises under 49 U.S.C. § 32710(b) and 28 U.S.C. §§ 1331 and 1337.

5.      The Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

## III.     PARTIES

6.      Plaintiff C. Dov Sacks ("Plaintiff") is a natural person and consumer who resides in Philadelphia, Pennsylvania at the address captioned above.

7.      Plaintiff is a transferee within the terms of the Federal Odometer Act.

8.      Defendant DJA Automotive LLC does business as Kia of West Chester ("Defendant" or "Kia").   Upon information and belief, the Defendant is a Pennsylvania limited liability company with a principal place of business as captioned above.

9.      Defendant is a transferor within the terms of the Federal Odometer Act.

10.     Defendant is a licensed dealer in new and used automobiles.

## IV.     STATEMENT OF CLAIM

11.     On or about January 7, 2009, Plaintiff decided to visit Defendant's car dealership, Kia of West Chester, after seeing an online advertisement for a 2004 Kia Optima EX automobile with a vehicle identification number ending with 4373 (hereinafter the "Optima").

12.     Defendant's advertisement for the Optima touted "LOW Miles!!", stated that the auto had a mileage of "33,609" and came with "the balance of the factory warranty."   (See Exhibit "A" hereto, printout of the online advertisement).

13.     Upon his arrival at Defendant's dealership in West Chester, Plaintiff was shown the Optima by a sales person named Karen, who remarked numerous times on the stated "low mileage" selling point.

14.     Plaintiff decided to purchase the Optima.  He purchased the vehicle for consumer purposes, *i.e.* personal, family or household use.

15.     Plaintiff was persuaded to purchase this Optima vehicle, a 2004 model, rather than a 2006 model with higher mileage, in reliance on the representations that the Optima had "low mileage" of approximately 33,609 miles on it.

16.     In reality, the Optima had over 59,000 miles on it on January 7, 2009.  The high mileage was known to or detectable by Kia as it, upon information and belief, inspected the vehicle, accessed its service and maintenance history and ran a Carfax or similar title history on the Optima.

17.     Kia regularly buys and sells used automobiles.  Kia and its experienced  agents knew or should have known that the mileage of the Optima vehicle was substantially in excess of that shown in its advertisement.

18.     Kia knew or should have known that the representations made by its salespersons and its advertisements as to mileage were false.

19.     Upon completing the sales transaction for the Optima, Plaintiff was given an odometer disclosure signed by a representative of Defendant Kia.  The Odometer Statement is required – and required to be accurate – by the Federal Odometer Act.   Therein, Kia certified that the vehicle had "33,609" miles and "to the best of my knowledge that it reflects the actual mileage of the vehicle described above."   (A copy of the odometer disclosure statement is attached hereto as Exhibit "B").

20.     Significantly, a check box on the odometer disclosure by the statement **"WARNING! ODOMETER DISCREPANCY"**, was left blank. (Id.). (Bold caps in original).

21.     Kia and its representatives knew or should have known that the certified statements on the odometer disclosure were false.

22.     At the time of purchase, Plaintiff was entitled to the balance of the manufacturer's new car warranty.  At the advertised mileage of 33,609, the car would have had a remaining 26,400 miles covered on the limited power train warranty as well as almost 2,400 miles of paint and audio warranty.  At the actual mileage, there was virtually no manufacturer's warranty remaining at the time of the purchase.

23.     Plaintiff also agreed to purchase an extended warranty valid for four years or 48,000 miles beyond the present (stated) mileage.  (*See* Exhibit "C").  The warranty documents indicate that the mileage at the time was "33,609".  Page 3 of this warranty lists contract exclusions, one of which applies to: "any vehicle that currently has or at any time has had an altered, or an operative odometer that has been left unrepaired." (Id. at p.3, ¶12).  The cost of the warranty was $1,634.00 beyond the purchase price of the vehicle, but was, in effect, worthless.

24.     While at the dealership, Kia also sold car insurance to Plaintiff through State Farm.  Plaintiff insured the vehicle and himself at excessive cost based on the amount of an inflated value for the vehicle based on Kia's representations that the vehicle had low mileage of 33,609.

25.     After purchasing the vehicle, Plaintiff drove off the lot with a temporary registration for the Optima.  When the temporary registration expired in April 2009, he had still not received his permanent registration and heard no explanation from Kia regarding the cause of the delay.

26.     After expiration of the temporary registration, Plaintiff was relegated to driving without registration for over 6 months. Plaintiff did so at his own personal risk in the event of an accident, theft or police traffic stop.

27.     Plaintiff contacted Kia approximately 20 times in the time period between the sale to him in January, 2009,  and finally receiving his registration over one year later.  Kia caused the extraordinary delay.

28.     At one point in August 2009, eight months after purchase, a Kia representative informed Plaintiff that an error in the chain of ownership of the Optima resulted in a "typo" on the mileage record as registered with the Commonwealth, which resulted in the record reflecting a mileage of about 30,000 miles in excess of the "true mileage" of the vehicle.

29.     Plaintiff finally received a valid registration for the Optima on January 23, 2010.

30.     On or about June 29, 2011, Plaintiff decided to sell the Optima vehicle and purchased a Carfax report to make sure that the prospective buyer would not encounter red flags when researching the car.

31.     The Carfax contained multiple entries related to odometer rollback and inconsistent mileage reports, including a "potential odometer rollback" just prior to Kia's sale of the Optima to him on January 7, 2009.  The Carfax indicates no evidence of a "typo" but rather incidents of odometer rollback.  (Exhibit "D" hereto).

32.     Upon information and belief, Kia regularly inspects the maintenance and service history of a used vehicle before selling it.

33.     Upon information and belief, Kia regularly runs Carfax reports prior to their purchase of used cars from sellers.

34.     Upon information and belief, Kia regularly runs Carfax reports prior to selling vehicles to consumers.

35.     Upon information and belief, Kia prominently displays the "Carfax" logo on its internet web page advertisements, and did so at the time of selling the Optima to Plaintiff.

36.     Upon information and belief, Kia had run a Carfax on Plaintiff's vehicle, and thereby knew that the odometer on Plaintiff's vehicle had been rolled back.

37.     In light of the foregoing, Kia's representation that the mileage was a "typo" was false, deceptive and fraudulent.

38.     Plaintiff has been unable to sell the vehicle due to the negative Carfax history reflecting the odometer rollback.

## COUNT I – FEDERAL ODOMETER ACT

39.     The Plaintiff sets forth the foregoing allegations at length as if set forth herein.

40.     Defendant DJA Automotive LLC d/b/a Kia of West Chester violated the Federal Odometer Act by making false statements in an odometer disclosure to a transferee, in violation of 49 U.S.C. § 32705(a) and 49 C.F.R. § 580.4.

41.     Defendant DJA Automotive LLC d/b/a Kia of West Chester violated the Federal Odometer Act with intent to defraud as to mileage.

WHEREFORE, Plaintiff C. Dov Sacks prays that this Court enter judgment in his favor against Defendant DJA Automotive LLC d/b/a Kia of West Chester for:

(a) damages;

(b) three times his actual damages;

(c) reasonable attorney's fees and costs of suit; and

(d) any other relief the Court deems just and proper.

## COUNT II – PENNSYLVANIA ODOMETER STATUTE

42.     The Plaintiff sets forth the foregoing allegations at length as if set forth herein.

43.     Defendant DJA Automotive LLC d/b/a Kia of West Chester violated the State Odometer Act by:

> (a) failing to comply with federal odometer disclosure requirements; and

> (b) knowingly giving a false disclosure statement to a transferee.

75 Pa. C.S. §7134.

44.     Defendant DJA Automotive LLC d/b/a Kia of West Chester violated the State Odometer Act with intent to defraud as to mileage.

WHEREFORE, Plaintiff C. Dov Sacks prays that this Court enter judgment in his favor against Defendant DJA Automotive LLC d/b/a Kia of West Chester for:

> (a) damages;

> (b) three times his actual damages;

> (c) reasonable attorney's fees and costs of suit; and

> (d) any other relief the Court deems just and proper.

## COUNT III – UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION LAW

45.     The Plaintiff sets forth the foregoing allegations at length as if set forth herein.

46.     Defendant's violations of the State Odometer Statute are unfair and deceptive acts or practices remedied by the penalties authorized by the Pennsylvania Unfair Trade Practices and Consumer Protection Law.  75 Pa. C.S. § 7137; 73 Pa. C.S. 201-9.2.

47.     Further, Defendant committed unfair and deceptive acts or practices in violation of Pennsylvania's Unfair Trade Practices and Consumer Protection law, including but not limited to one or more of the following:

(a) representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have. 73 Pa. C.S. § 201-2(4)(v);

(b) representing that goods or services are of a particular standard, quality or grade, or that goods are of a particular style or model, if they are of another. 73 Pa. C.S. § 201-2(4)(vii);

(c) engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding. 73 Pa. C.S. § 201-2(4)(xxi).

48.    Plaintiff justifiably relied on Defendant's misrepresentations and omissions, which directly caused him damage.

WHEREFORE, Plaintiff C. Dov Sacks prays that this Court enter judgment in his favor against Defendant DJA Automotive LLC d/b/a Kia of West Chester for:

(a) damages;

(b) three times his actual damages;

(c) reasonable attorney's fees and costs of suit; and

(d) any other relief the Court deems just and proper.

## COUNT IV – BREACH OF EXPRESS WARRANTY

49.    The Plaintiff sets forth the foregoing allegations at length as if set forth herein.

50.    The representations made by the figures on the odometer itself and by the odometer disclosure statement attached as Exhibit "C" that the Optima had been driven 33,609 miles, and the representations by the advertisement and by Kia that the automobile had "low mileage" were each affirmations of fact or promises which became part of the basis of the

bargain between Plaintiff Dov Sacks and Defendant DJA Automotive LLC d/b/a Kia of West Chester.  13 Pa. C.S. § 2313.

51.    Those representations were not true.  Defendant breached its express warranties to Plaintiff.

52.    As a result of the breach of express warranty by Defendant, Plaintiff has incurred actual damages, including losses equal to the difference between the value of the Optima as warranted and the value of the Optima as delivered, and other damages.

WHEREFORE, Plaintiff C. Dov Sacks prays that this Court enter judgment in his favor against Defendant DJA Automotive LLC d/b/a Kia of West Chester for:

(a) damages;

(b) any other relief the Court deems just and proper.

## V.    **DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury as to all issues so triable.

Respectfully submitted:

Date: _1/17/12_

CARY L. FLITTER
THEODORE E. LORENZ
ANDREW M. MILZ
Attorneys for Plaintiff

LUNDY, FLITTER, BELDECOS &
BERGER, P.C.
450 N. Narberth Avenue
Narberth, PA  19072
(610) 822-0781

# EXHIBIT "A"

Kia of West Chester

## 2004 Kia Optima EX



22 Pictures!!

| | |
|---|---|
| Body: | 4dr Car |
| Selling Price: | $9,769.00 |
| MSRP: | $9,769.00 |
| Book Value: | NA |
| Ext Color: | Ruby Red |
| Int Color: | Beige |
| Engine: | 6 |
| Transmission: | Automatic |
| Mileage: | 33609 |
| VIN: | ████████4373 |
| Stock #: | 274373P |
| Certified: | Yes |

City MPG **20**   Highway MPG **27**

**Contact :**
Karen Wotasek
610-429-3500
kwotasek@kiaofwestchester.com

## Vehicle Equipment

- Driver Air Bag
- Climate Control
- Cassette
- Rear Defrost
- Keyless Entry
- Power Tilt/Sliding Sunroof

- Passenger Air Bag
- A/C
- CD Player
- Child Safety Locks
- Power Door Locks
- Power Driver Seat

- Passenger Air Bag On/Off Switch
- Alarm
- 4-Wheel Disc Brakes
- Front Wheel Drive
- Heated Mirrors
- Pass-Through Rear Seat

- Side Air Bag
- AM/FM Stereo
- Cruise Control
- Auto-On Headlights
- Power Driver Mirror
- Cloth Seats

Kia of West Chester

- Power Steering
- Aluminum Wheels
- Premium Sound System

- Heated Exterior Passenger Mirror
- Driver Illuminated Vanity Mirror
- Leather Wrapped Steering Wheel

- Adjustable Steering Wheel
- Power Windows
- Fog Lamps

- Variable Speed Intermittent Wipers
- Passenger Illuminated Visor Mirror
- Emergency Trunk Release

- Tires - Front Performance
- Intermittent Wipers
- Power Passenger Mirror

- Auto-Off Headlights

- Front Reading Lamps

- Remote Trunk Release

- Tires - Rear Performance
- Sun/Moon Roof
- Heated Exterior Driver Mirror

- Electrochromic rearview mirror

- Driver Lumbar

- Universal Garage Door Opener

## Dealer Comments

We a great find! This Optima is loaded up with leather, sunroof, power everything and LOW Miles!! This vehicle comes with the balance of the factory warrany, and everything works perfectly. If you are looking for a loaded vehicle for under $10,000 then you have found it! This Optima will not be here for long - so come in and check it out asap!

## Kia of West Chester • 326 Westtown Road, West Chester, PA, 19382 • 610-429-3500

# *EXHIBIT "B"*

STOCK NO. **274373P**     CUSTOMER (TRANSFEREE) **CHAIM DOV SACKS**     DATE **01/07/2009**
(BUYER'S PRINTED NAME)

ADDRESS **5200 HILLTOP LN**     CITY **BROOKHAVEN**     STATE **PA**     ZIP **19015**

*Federal law (and State law, if applicable) requires that you state the mileage upon transfer of ownership. Failure to complete or providing a false statement may result in fines and/or imprisonment.*

THE BELOW NAMED TRANSFEROR/SELLER OF:

Year **2004**   Make **KIA**     Model **OPTIMA**     Body Type **EX V6**

V.I.N. **4373**

States that the odometer mileage indicated on the vehicle described above now reads _____ **33609** _____ (no tenths) miles and to the best of my knowledge that it reflects the actual mileage of the vehicle described above, unless one of the following statements is checked.

☐ **I HEREBY CERTIFY:** THAT TO THE BEST OF MY KNOWLEDGE THE ODOMETER READING REFLECTS THE AMOUNT OF MILEAGE IN EXCESS OF ITS MECHANICAL LIMITS.

☐ **I HEREBY CERTIFY:** THAT THE ODOMETER READING IS **NOT** THE ACTUAL MILEAGE.

# WARNING! • ODOMETER DISCREPANCY

Dealership (Transferor) **KIA OF WEST CHESTER**     Buyer's Signature _____
(PRINTED NAME)     (receipt of copy acknowledged)

Address **326 WESTTOWN ROAD**     Co-Buyer (Transferee) _____

City **WEST CHESTER**   State **PA**   Zip **19382**     Co-Buyer (Transferee)
(PRINTED NAME)

Transferor's Signature _____     Co-Buyer's Signature _____
(For Dealerships)   (receipt of copy acknowledged)     (TRANSFEREE)

# ODOMETER STATEMENT

# EXHIBIT "C"

# VEHICLE SERVICE CONTRACT APPLICATION

GE Money
Warranty Services

**Insured by:**
**Heritage Indemnity Company**
P.O. Box 140057
Denver, CO 80214-0057

## SCHEDULE
### MISSING INFORMATION WILL DELAY PROCESSING OF THIS APPLICATION

**(A)** YOUR APPLICATION/CONTRACT NUMBER
NA36- **3003309**

**(B)** PURCHASER or LESSEE (You and Your) LAST NAME: **SACKS**  FIRST NAME: **CHAIM D**  MI:
YOUR TELEPHONE NUMBER: **(267)983-7157**

ADDRESS: **5200 HILLTOP LN APT K15**  CITY: **BROOKHAVEN**  STATE: **PA**  ZIP CODE: **19015**

**(C)** YEAR: **2004**  MAKE: **KIA**  MODEL: **OPTIMA**
VEHICLE IDENTIFICATION NUMBER (VIN): **████4373**

**(D)** EFFECTIVE DATE: **01/07/2009**  ODOMETER READING: **33609**
DATE CONTRACT PURCHASED
MONTHS: **48**  **TERM*** OR MILES: **48000**  *WHICHEVER OCCURS FIRST

**(E)** ADMINISTRATOR
**GE CAPITAL MANAGEMENT CORPORATION**
P. O. BOX 140057
DENVER, CO 80214-0057

DEALER NUMBER

CLAIMS TELEPHONE NUMBER
**800-322-3933**

**(G)** PLEASE SELECT ONE:

**3 STAR**
Components 1-3* ○

**3 STAR PLUS**
Components 1-11* ⊗

*Please See Coverage, Section 6

**(F)** CAR RENTAL: **$35**  ROADSIDE SERVICE: **TOO-GE-4HELP** 866-434-4357  TRIP INTERRUPTION: **$100**  VEHICLE PURCHASE PRICE: **7399.53**

CONTRACT PRICE: **1634 00**  LIENHOLDER: **CITADEL FEDERAL CREDIT UNION**

**(H)** ISSUING DEALER NAME: **KIA OF WEST CHESTER**  ADDRESS: **326 WESTTOWN ROAD**  CITY: **WEST CHESTER**  STATE: **PA**  ZIP CODE: **19382**

**(I)**

### COVERAGE OPTIONS
**3 Star Plus Only**
○ **POWER TECH AND ELECTRONICS**

**3 Star Only**
○ **SEALS AND GASKETS***
* Vehicles with over 100,000 miles at time of purchase are not eligible for this Coverage Option.

**3 Star and 3 Star Plus**
○ **HYBRID ELECTRIC**

### DEDUCTIBLE OPTIONS
*NOTE: The Standard Deductible is $100*

○ **$ 50**
○ **$ 200**
○ **Disappearing $100**
All Deductibles are "per repair visit."

### CHECK IF VEHICLE HAS:
○ **DIESEL**
○ **ALL OR 4 WHEEL DRIVE**
○ **SUPERCHARGER OR TURBO**
○ **V10 ENGINE**
*Please Check all That Apply*

**COMMERCIAL USE OPTION:** *AVAILABLE FOR NEW VEHICLES ONLY THAT HAVE NOT PREVIOUSLY BEEN REGISTERED OR PUT INTO SERVICE.*
○ This box must be checked to indicate the Approved Vehicle will be used for approved Commercial Use purposes only. See Coverage Options, Section 7, and General Contract Exclusions, Section 9.

**(J)** PURCHASE OF THIS CONTRACT IS NOT REQUIRED TO LEASE, PURCHASE, OR OBTAIN FINANCING FOR A MOTOR VEHICLE.

This Contract is between GE Capital Warranty Corporation, 7125 W. Jefferson Ave., Suite 200, Lakewood, CO 80235, 800-322-3933 (herein referred to as **We, Us,** and **Our**), and **You** and provides coverage for the Term stated in Block D.

I, the undersigned, hereby apply for a vehicle service contract (Contract) covering the vehicle described above. My signature means that I have reviewed and understand the time and mileage limitations, coverage, and exclusions, and that the repair of non-covered components is excluded from coverage. I have reviewed ALL the coverage and options available. All of the options I wish to purchase are clearly marked above. I have read and understand the Required Maintenance, Section 4, of the Contract. I hereby declare that I have received the Contract and the above information is correct.

_____
YOUR SIGNATURE

DEALER REPRESENTATIVE
☐☐☐☐—☐☐☐☐
TRACKING CODE

D6VBSNA02

CUSTOMER COPY

## UPON OUR ACCEPTANCE OF YOUR APPLICATION, THIS IS YOUR CONTRACT
### PLEASE READ CAREFULLY

## SECTION 1: CONTRACT DEFINITIONS

**ADMINISTRATOR:** GE Capital Management Corporation is the Administrator of this Contract. You may contact the Administrator at any time to have coverage questions answered or receive assistance in filing a claim under this Contract at 800-322-3933.

**APPROVED VEHICLE:** A vehicle that meets the Administrator's underwriting requirements for mileage, condition, and vehicle type, and is listed in Block C of the Schedule.

**CONTRACT TERRITORY and TERM:** This Contract applies to a Mechanical Breakdown occurring only within the United States, its Territories or Possessions, and Canada. It is effective upon issuance and expires in accordance with the elapsed time or mileage, whichever occurs, first shown in the Schedule attached to this Contract for the Term You purchased.

**COVERED PARTS:** The parts specifically listed in Coverage, Section 6, that are not specifically excluded in General Contract Exclusions, Section 9. **Coverage includes fluids and labor when required as part of a covered Mechanical Breakdown.**

**EFFECTIVE DATE:** The Date this Contract was purchased as listed in Block D of the Schedule.

**EXPIRATION DATE:** The Effective Date plus the Term You purchased as listed in Block D of the Schedule.

**EXPIRATION MILEAGE:** If the mileage Term purchased is OVER 48,000 miles, this Contract will expire at the mileage Term purchased (For example, in the Term 84/75 (84 months or 75,000 miles), the Contract will expire at 75,000 miles.) The mileage Term purchased is NOT added to the mileage on the odometer at the time of purchase.

If the mileage Term purchased is 48,000 miles or LESS, the mileage Term purchased IS added to the mileage on the odometer at the time of purchase.

This Contract will expire at either the Expiration Date or the Expiration Mileage, whichever occurs first, or when We have wholly fulfilled Our financial obligations under the terms of the Limit Of Liability clause of the General Provisions, Section 10, of this Contract.

**MECHANICAL BREAKDOWN:** The failure of a Covered Part to perform its intended function due to defects in materials or faulty workmanship in its manufacturing. **The following applies to 3 Star Plus Coverage only:** A Mechanical Breakdown includes wear and tear that exceeds tolerances allowed by the manufacturer of the Approved Vehicle. This includes damage to a Covered Part caused by the failure of a non-covered part, provided that no exclusion listed in the General Contract Exclusions, Section 9, applies. Non-covered parts are not covered.

**SCHEDULE:** Upon acceptance by the Administrator, Your Vehicle Service Contract Application becomes Your Schedule.

**WE, US, and OUR:** GE Capital Warranty Corporation.

**YOU and YOUR:** The Purchaser or Lessee shown in Block B of the Schedule or the person to whom this Contract was properly transferred.

## SECTION 2: HOW TO MAKE A CLAIM

1. If the Approved Vehicle is inoperable, or to prevent further damage, call 866-434-4357 (see TOO-GE-4HELP Roadside Service under Added Coverages, Section 8);
2. You must authorize the Issuing Dealer or any other state licensed repair facility to inspect and diagnose the Mechanical Breakdown, as necessary, to determine the cause of failure and the cost of parts and labor to repair;
3. If requested, permit inspection of the Approved Vehicle by the Administrator **BEFORE** repairs are performed;
4. **Prior to starting repairs, You or the repair facility must call the Administrator at 800-322-3933 with diagnosis and estimate of repairs.** If a covered Mechanical Breakdown occurs when the Administrator's office is closed, You or the repair facility must call the Administrator during the next business day. **Failure to call in and report the claim on the next business day may result in nonpayment (see General Contract Exclusions, Section 9);**
5. Upon request, provide proof of maintenance (see Required Maintenance, Section 4);
6. You must pay the deductible and any other non-covered expenses as applicable;
7. If a Mechanical Breakdown is **NOT** covered by this Contract, any cost incurred for disassembly or diagnostic work is Your responsibility and expense (see General Contract Exclusions, Section 9);
8. Payment for covered Mechanical Breakdowns will be made to either the repair facility or You in accordance with Contract provisions within thirty (30) days after receipt of the repair order. Repair orders must be received by the Administrator within ninety (90) days of completion of repairs;

*Claims mailed in without prior authorization from the Administrator will be denied (see General Contract Exclusions, Section 9).*

## SECTION 3: PAYMENT OF MECHANICAL REPAIRS

We will pay for the reasonable cost to repair a covered Mechanical Breakdown or reimburse You for the reasonable cost to repair a covered Mechanical Breakdown (diagnostic and repair time is allowed only as indicated in a current edition of a Chilton, Motor, Mitchell, or AllData labor guide) or We will arrange for the repair of such covered Mechanical Breakdown at Our expense when repaired by a state licensed repair facility. The payment of sales tax on covered repairs will be made in accordance with the regulations of the taxing authority in the state where Your Approved Vehicle has been repaired.

## SECTION 4: REQUIRED MAINTENANCE

In order to keep this Contract in force or transfer this Contract, You must maintain the Approved Vehicle in accordance with the manufacturer's published maintenance requirements from the date You purchased the Approved Vehicle. Before any repair is authorized or transfer approved, We will require You to prove You have properly maintained the Approved Vehicle as required. You are responsible for retaining the receipts identifying the Approved Vehicle showing dates, mileage, services performed, year, make, model, and vehicle identification number (VIN), and providing them to the Administrator in the event of a claim or transfer. **The performance of normal maintenance services is not covered by this Contract.**

## SECTION 5: DEDUCTIBLES

The Deductible is the portion of repair costs You must pay for each covered repair visit as shown in Block I of the Schedule. The Deductible does not apply to Car Rental, Trip Interruption, or TOO-GE-4HELP Roadside Service listed in the Added Coverages, Section 8, of this Contract. The standard Deductible is $100. Deductible options are $50, $200, and Disappearing $100. The Disappearing $100 provides that no Deductible will be charged for a covered repair visit as long as the Approved Vehicle is returned to the Issuing Dealer listed in Block H of Your Schedule for repair. If no Deductible option is checked, the standard $100 applies.

## SECTION 6: COVERAGE
COVERED COMPONENTS ONLY – ONLY THE PARTS LISTED BELOW IN EACH COMPONENT ARE COVERED. ANY PARTS _NOT_ LISTED ARE _NOT_ COVERED.

**3 STAR:**
1. **ENGINE:** Engine block, cylinder head, rotor housing, oil pan, valve cover, timing cover; all internally lubricated parts contained within the engine; oil pump; timing chain, gears, and tensioners; timing belt and tensioners; balance belt; variable valve camshaft adjuster; intake and exhaust manifolds; harmonic balancer; engine mounts; water pump; flywheel; and flexplate.
2. **TRANSMISSION, TRANSAXLE, and TRANSFER CASE (Automatic and Standard):** Case housings, housing covers, and pans; all internally lubricated parts contained within the housings; torque converter; viscous coupling; vacuum modulator; and transmission mounts.
3. **DRIVE AXLE (Includes transaxle and four (4) wheel drive vehicles):** Front and rear drive axle housings and covers; all internally lubricated parts contained within the drive axle housings; axle shafts; constant velocity joints and boots; driveshafts; universal joints; flex discs; driveshaft center support bearing; driveshaft yokes; four (4) wheel drive engagement actuators and motors; and four (4) wheel drive locking hubs.

**3 STAR PLUS:** If You purchased this coverage, it covers components one (1) through three (3) above, PLUS components four (4) through eleven (11) below:
4. **FRONT SUSPENSION:** Upper and lower control arms; upper and lower ball joints; and hub and wheel bearings.
5. **STEERING:** Steering gear, rack and pinion housings, and all internally lubricated parts contained within the housings; and power steering pump and power cylinder assembly.
6. **BRAKES:** Master cylinder; vacuum or hydro booster; wheel cylinders; calipers; equalizer and distributing valves; ABS electronic control unit, wheel speed sensor, and exciters; and ABS proportioning control valves and high-pressure hydraulic pump.
7. **FUEL:** Fuel injectors; fuel pump; and all internal parts of the turbocharger or supercharger and their housings.
8. **COOLING:** Radiator, electric cooling fan motor and its relay, fan clutch; and fan shroud.
9. **ELECTRICAL:** Starter motor; starter solenoid; alternator and its mounting bracket; voltage regulator; wiper motor; and headlamp, turn signal, and windshield wiper switches.
10. **INTERIOR CLIMATE AND COMFORT (Factory or dealer installed with factory approved parts only):** Air conditioning compressor, clutch, pulley, and its mounting bracket; accumulator; receiver dryer; evaporator; and condenser.
11. **SEALS AND GASKETS:** Seals and gaskets for all parts listed above.

## SECTION 7: COVERAGE OPTIONS
_3 STAR AND 3 STAR PLUS:_ Available ONLY if selected at the time of Contract purchase and indicated in Block I of the Schedule.
**HYBRID ELECTRIC VEHICLE PACKAGE:** High voltage hybrid battery; power inverter assembly; drive motor assembly; generator assembly; hybrid cooling system blower motors and pumps; hybrid system stator and rotor; and all hybrid system control units and sensors.
**COMMERCIAL USE:** Approved **New** Vehicles **ONLY** (a vehicle that has not previously been registered or put into service), not used as pool or fleet vehicles, for, but not limited to: service and repair work (e.g. electrician, carpenter, or plumber), delivery (e.g. florist, messenger, or meal delivery), agriculture (e.g. farming and ranching), or light duty contracting (e.g. handyman or painter). **THE OPTION BOX ON THE SCHEDULE IN BLOCK I MUST BE CHECKED BY THE DEALER AT THE TIME OF PURCHASE OF THIS CONTRACT AND AT THE TIME THE APPROVED VEHICLE WAS PURCHASED. SEE GENERAL CONTRACT EXCLUSIONS, SECTION 9, FOR INELIGIBLE COMMERCIAL USE.**

_3 STAR ONLY:_ Available ONLY if selected at the time of Contract purchase and indicated in Block I of the Schedule on Approved Vehicles with less than one hundred thousand (100,000) miles on the odometer at the time of purchase.
**SEALS AND GASKETS:** Seals and gaskets for the parts listed in components 1, 2, and 3 above.

_3 STAR PLUS ONLY:_ Available ONLY if selected at the time of Contract purchase and indicated in Block I of the Schedule.
**POWER TECH AND ELECTRONICS:** Manual and power window regulators; power antenna motor and mast; power trunk or tailgate actuator and motor; power headlight door motors and actuators; power sunroof motor; convertible top lift motor; power seat motor transmission and cables; power mirror motors; cruise control assembly; speedometer; odometer; fuel gauge; tachometer; volt and amp gauge; temperature gauge; trip computer control module and display; factory installed electronic combination entry and anti-theft devices; transmission and transfer case control modules; ignition control modules; fuel injection control modules; fuel injection sensors; and electronic air conditioning control head and module.

## SECTION 8: ADDED COVERAGES
The following coverages are included at no additional cost to You:
**MANUFACTURER'S DEDUCTIBLE:** When a Mechanical Breakdown is also covered under a warranty issued by the manufacturer of the Approved Vehicle, We will pay You the required deductible less this Contract's Deductible listed in Block I of the Schedule.
**CAR RENTAL:** If Your Approved Vehicle becomes inoperative due to a covered Mechanical Breakdown, We will pay for Car Rental reimbursement up to thirty-five dollars ($35) per day, not to exceed a total of two hundred ten dollars ($210) for any one (1) period. Car Rental will be based on the number of labor hours approved for the Mechanical Breakdown repair. Each eight (8) hours or portion thereof of approved labor counts as one (1) day Car Rental. In the event the Approved Vehicle needs to be inspected by Us, We will pay up to an additional two (2) days Car Rental. If parts must be ordered, We will pay up to an additional two (2) days Car Rental. Car Rental is not provided for delays because of shop scheduling or for work not covered by Your Contract. Rental will be reimbursed only upon receipt of an invoice from a licensed car rental agency.
**TOO-GE-4HELP ROADSIDE SERVICE:** If You require roadside service on the Approved Vehicle, please call 866-434-4357. This service provides You with towing, jump starting, tire changes, lock out, and fluid delivery. The only roadside service expenses that will be reimbursed are those incurred with TOO-GE-4HELP Roadside Service. If a tow is required, Your Approved Vehicle will be towed to Your Issuing Dealer or a state licensed repair facility of Your choice, both within a fifty-mile (50) radius. To call in a claim, see How to Make a Claim, Section 2.
**TRIP INTERRUPTION: (Not available on Contracts purchased in Hawaii and West Virginia)** You will receive reimbursement from Us for a maximum of three (3) days for receipted expenses for meals (in restaurants only), and lodging incurred by You while staying at a hotel/motel up to a maximum of one hundred dollars ($100) per day. Trip Interruption coverage is provided if: 1. You cannot operate Your Approved Vehicle due to a covered Mechanical Breakdown and are more than one hundred (100) miles from home; and, 2. Meals and lodging are required because the covered Mechanical Breakdown causes a delay en route.

## SECTION 9: GENERAL CONTRACT EXCLUSIONS
*THIS CONTRACT DOES NOT COVER OR APPLY TO ANY OF THE FOLLOWING CONDITIONS:*

1. Any claim submitted without the authorization of the Administrator prior to starting any repairs. (See How to Make a Claim, Section 2.)
2. Any Mechanical Breakdown or damage resulting from the continued operation, such as not stopping Your vehicle immediately or having it towed, or caused by Your failure to take reasonable precautions to prevent further damage when an apparent problem exists.
3. The repair or replacement of any Covered Part if a Mechanical Breakdown has not occurred.
4. Any costs incurred for diagnostics or disassembly work if a Mechanical Breakdown is not covered by this Contract.
5. Any environmental surcharges, waste disposal fees, shop supplies, and other similar miscellaneous charges.
6. Any part not listed for coverage, including but not limited to, the performance of normal maintenance services as set forth in the owner's guide for the Approved Vehicle and scheduled replacement of parts and wear items. This includes freight and core charges; any part that was not originally installed by the manufacturer; oil, coolant, additives, and refrigerants or other fluids, except in conjunction with the repair of a Covered Part (this is limited to necessary amounts required to refill the system one (1) time for the repair of the Covered Part).
7. Damage to a Covered Part caused by the failure of a non-covered part (3 Star Coverage Only).
8. Any part that a repair facility or manufacturer recommends or requires to be repaired, replaced, or is an update (including updated software or programming), and is not a Mechanical Breakdown. This includes modifications, replacement or alteration of existing parts or systems necessitated by the replacement of an obsolete, superceded, or unavailable part.
9. Any Mechanical Breakdown or damage resulting from misuse; abuse; negligence; collision or upset; fire or smoke; theft or attempted theft; vandalism; riot or civil commotion; explosion; lightening; earthquake; freezing; rust or corrosion; windstorm; hail; water or flood; acts of God; salt; environmental and road hazard damage; chemical; nuclear incident; or acts of war.
10. Any Mechanical Breakdown caused by a lack of required maintenance as set forth under Required Maintenance, Section 4; contaminants or contaminated fluids, fuel, coolants, oils, and lubricants; foreign objects; improper amounts or types of lubricants, fuels, or coolants; sludge and/or varnish.
11. Any loss or expense that is a direct result of a mechanical or structural defect for which a manufacturer has announced a recall or other announcement for the purpose of correcting a defect, or the repair of any part covered by the Federal Emission Warranty.
12. Any vehicle that currently has or at any time has had an altered, or inoperative odometer that has been left unrepaired, whether such repair is covered by this Contract or not.
13. Any vehicle modified or altered with, but not limited to, high performance and/or off-road equipment that is not original factory equipment, done before or after the Effective Date of this Contract. This includes tire or wheel sizes and offsets not recommended by the manufacturer.
14. Any vehicle used for any form of competitive driving or racing.
15. Any vehicle used for pulling a trailer, unless the vehicle was properly equipped beforehand for this purpose as recommended by the manufacturer.
16. Any vehicle that is reconstructed from salvage; declared a total loss; is a manufacturer buyback; declared a lemon; or if the original manufacturer's warranty has been voided for any reason.
17. Any loss or expense if Your Approved Vehicle is used or equipped for the following: government agencies; fire, police, or any emergency services; rental, taxicab, limousine, shuttle or livery service; railroad; or any forestry activities.
    If the Commercial Use Option in Block I of the Schedule was not selected, the following commercial exclusions apply: Any loss or expense if your Approved Vehicle is used or equipped for the following in addition to the above excluded uses, this contract will not cover: Delivery or hauling; agricultural purposes; route work; job site activities; service or repair work; fieldwork and construction trades.
18. Any vehicle that has the following characteristics: step-van; high-cube van; box body; cab and chassis or other incomplete vehicle; right hand steering; any vehicle that has business related equipment permanently mounted to the chassis or bed of the vehicle; or that have special bodies designed for construction, hauling or delivery.
19. Any vehicle that is used for snowplowing.
20. Any vehicle not originally manufactured to U.S. specifications, commonly known as a gray market vehicle.
21. Liability for consequential or incidental damage to property or injury or death of any person.
22. Any repair where the only malfunction is low compression or excessive use of oil, unless parts exceed wear tolerances allowed by the manufacturer. Repair to piston rings and/or valves are not covered if the only malfunction is due to carbon buildup.
23. Any pre-existing condition (A condition that already existed on the Approved Vehicle when You purchased Your Contract).
24. Any Mechanical Breakdown covered by any limited warranty, manufacturer's warranty, repairer's guarantee, road club, or any other guarantee, warranty, or insurance policy, whether collectible or not.

**IF YOUR APPROVED VEHICLE IS USED, MODIFIED, OR ALTERED IN THE MANNER DESCRIBED ABOVE, WE WILL CANCEL THIS CONTRACT AS OF THE DATE WE ARE MADE AWARE OF SUCH USE OR MODIFICATION. IF WE CANCEL THIS CONTRACT, YOU WILL BE ENTITLED TO A REFUND COMPUTED AS OF THE DATE AND MILEAGE WE BECOME AWARE OF THE USE OR MODIFICATION, CALCULATED UNDER THE TERMS SET FORTH IN THE TERMINATION REFUND AND RETAINED CHARGES CLAUSE OF THE GENERAL PROVISIONS SECTION OF THIS CONTRACT AND NO CLAIMS WILL BE PAYABLE.**

## SECTION 10: GENERAL PROVISIONS
**THIS CONTRACT IS NOT RENEWABLE**
**REPAIRER'S GUARANTY OR OTHER SERVICE CONTRACT:** Any repair facility repairing Your Approved Vehicle for a Mechanical Breakdown covered by this Contract is fully responsible for that repair for the term of the warranty indicated on the repair order (minimum ninety (90) days). This Contract has no liability for similar repairs to the same part(s) during the warranty period.
**LIMIT OF LIABILITY:** This Contract is limited to repair or replacement of the failed covered part only to restore the failed part to the same or like condition prior to a Mechanical Breakdown. Our Limit of Liability is the total of all claims and benefits paid or payable under and during the Term of this Contract and shall in no event exceed the Approved Vehicle's actual cash value as determined at the time of any repair as currently listed on the NADA website (www.nada.com).

## SECTION 10: GENERAL PROVISIONS (Continued)

**LIENHOLDER ENDORSEMENT:** If You financed the vehicle shown in the Schedule, and so long as the Lienholder is the Legal Owner or the Lessor, then the protection and termination provisions provided to You by this Contract shall accrue to the Lienholder in the event of repossession, total loss, or possession by other means.

**REPLACEMENT:** Replacement shall be made with parts of like kind and equivalent quality, which may include remanufactured or used parts.

**TERMINATION REFUND AND RETAINED CHARGES:** (Please also refer to State Changes, Section 11.) You may terminate this Contract by contacting the Issuing Dealer listed in Box H of the Schedule, or by written notice to the Administrator requesting termination. The information required to process a cancellation includes: Contract Number, date of cancellation, odometer reading at cancellation, and contract holder's signature. The Administrator may terminate this contract for nonpayment of the Contract Price or for any material misrepresentation. In the event this Contract is terminated, the amount We retain will be determined as follows: If this Contract is terminated within sixty (60) days of the Contract purchase date, the total amount paid by You for this Contract will be refunded provided no repair work has been performed or commenced. After the first sixty (60) days, or if repair work has been performed or commenced, We will retain an amount calculated pro rata based on the months or mileage elapsed since the purchase date, whichever is greater, plus a cancellation fee not to exceed the lesser of ten percent (10%) of the Contract Price or fifty dollars ($50) (unless state law provides otherwise). The Issuing Dealer will refund the balance to You. If the amount paid for this Contract was financed, the Issuing Dealer will make the refund to the lienholder, unless it has been notified the debt has been paid off.

**TRANSFER:** This Contract may be transferred to another individual to whom You sell or otherwise transfer the Approved Vehicle while the Contract is still in force. This Contract cannot be transferred if the title of the Approved Vehicle passes through any entity other than the subsequent purchaser, or if the Approved Vehicle is sold or traded to a dealership, leasing agency or any other entity or individual in the business of selling/leasing automobiles. This Contract may be transferred once, and the transfer must be initiated by the original Purchaser. In order to transfer this Contract, We must receive from You, within thirty (30) days of the date of sale of the Approved Vehicle, all of the following:

- A letter identifying the Approved Vehicle showing year, make, model, vehicle identification number, current mileage, and Contract Number. The letter must also state that the Purchaser of the Approved Vehicle has received and read the original Contract and understands and accepts its conditions, and it must be signed by both You and the Purchaser of the Approved Vehicle;
- A copy of the bill of sale;
- Verifiable service records evidencing You have complied with the manufacturer's recommended maintenance schedule; and,
- A transfer fee of $75.

No transfer will be approved if the transfer request is received beyond thirty (30) days of the date of the sale of the Approved Vehicle. If the transfer request is not approved, upon Your written request, Your Contract will be terminated as of the date You sold the Approved Vehicle. Any transfer fee and unearned portion of the Contract Price you paid will be refunded to You.

**OUR RIGHT TO RECOVER FROM OTHERS:** If We pay anything under this Contract and You have a right to recover from another party, Your rights will become Our rights, up to the amount We paid. You must do whatever is reasonably necessary to enable Us to enforce these rights of recovery.

**CONTRACT INSURED BY:** This Contract is not an insurance policy. However, We have an insurance policy in effect with Heritage Indemnity Company, California Certificate of Authority No. 6457/1997. You are entitled to make a direct claim against Heritage Indemnity Company, P.O. Box 140057, Denver, Colorado, 80214-0057, 800-322-3933, upon Our failure to perform repairs or to pay authorized claim repairs within sixty (60) days after the repair order has been filed with Us. Please refer to State Changes, Section 11.

**CHANGES:** This Contract contains ALL of the agreements between You and Us. Any alterations to this Contract will make it VOID and no claims will be paid. In that case, see Termination Refund and Retained Charges above.

**TERMS OF CONTRACT CONFORMED TO STATUTE:** Any terms of this Contract that are found to be in conflict with the statutes of the state in which this Contract was signed or the state in which You reside are hereby amended to conform to the minimum standards of those statutes.

## SECTION 11: STATE CHANGES

**Alabama:** The Termination Refund and Retained Charges section is amended to read as follows: In the event this Contract is terminated, the amount We retain will be determined as follows:

1. If this Contract is terminated within sixty (60) days of the Contract purchase date, the total amount paid by You for this Contract will be refunded, provided no repair work has been performed or commenced.
2. If You cancel the Contract after the first sixty (60) days, or if repair work has been performed or commenced We will retain an amount calculated pro rata based on the months and mileage elapsed since the purchase date, whichever is greater, plus a $25 processing charge. The Issuing Dealer will refund the balance to You. If the amount paid for this Contract was financed, the Issuing Dealer will make the refund to the lienholder, unless it has been notified the debt has been paid off.
3. If We cancel this Contract for nonpayment of the Contract Price or for any material misrepresentation, we will retain an amount calculated pro rata based on the months and mileage elapsed since the purchase date, whichever is greater.
4. A ten percent (10%) penalty per month shall be added to a refund that is not paid or credited within forty-five days after the return of the Contract to the provider.

**Connecticut:** The following is added: Resolution of Disputes: A written complaint may be mailed to: State of Connecticut, Insurance Department, P.O. Box 816, Hartford, CT 06142-0816, Attention Consumer Affairs. The written complaint must contain a description of the dispute, the purchase or lease price of the product, the cost of repair of the product and a copy of the Contract.

If the Contract is for less than one (1) year, the Contract shall automatically be extended until such time as repairs authorized by the Administrator have been completed on the Approved Vehicle.

## SECTION 11: STATE CHANGES (Continued)

**Georgia:** General Contract Exclusion section is amended to read as follows: The following is deleted:  Any pre-existing condition (A condition that already existed on the Approved Vehicle when You purchased Your Contract). The following is substituted in its place: Any and all pre-existing conditions reasonably known to You.

The General Contract Exclusion section is amended as follows: The following is deleted: Any vehicle that currently has or at any time has had an altered or inoperative odometer that has been left unrepaired, whether such repair is covered by this Contract or not. The following is substituted in its place: Any vehicle, while owned by You, that currently has or at any time has had an altered or inoperative odometer that has been left unrepaired, whether such repair is covered by this contract or not.

The following is deleted: Any vehicle modified or altered with, but not limited to, high performance and/or off-road equipment that is not original factory equipment, done before or after the Effective Date of this Contract. This includes tire or wheel sizes and offsets not recommended by the manufacturer. The following is substituted in its place: Any Approved Vehicle, while owned by You, that has been modified or altered with, but not limited to, high performance and/or off-road equipment that is not original factory equipment done before or after the Effective Date of this Contract is not covered.

The following is deleted: Any Mechanical Breakdown caused by a lack of required maintenance as set forth under Required Maintenance, Section 4; contaminants or contaminated fluids, fuel, coolants, oils, and lubricants; foreign objects; improper amounts or types of lubricants, fuels, or coolants; sludge and/or varnish.  The following is substituted in its place: Any Mechanical Breakdown caused by a lack of required maintenance as set forth under Required Maintenance, Section 4; contaminants or contaminated fluids; fuel, coolants, oils, and lubricants; foreign objects; improper amounts or types of lubricants, fuels, or coolants; and/or varnish.

The General Provisions section, Termination and Retained Charges clause is amended to read as follows:  This Contract can be cancelled by Us only for fraud, material misrepresentation, or failure to pay the consideration. The cancellation notice will be sent to You by first class mail to Your last address of record at least thirty (30) days prior to the effective date of the cancellation, stating the reason therefore. If We cancel this Contract, the refund will be calculated pro rata of the unearned premium.  If You cancel this Contract, the refund will be calculated pro rata of the unearned premium and We will retain a fee not to exceed ten percent (10%) of the unearned premium or fifty dollars ($50), whichever is less.

**Idaho:** Coverage afforded by this motor vehicle service contract is not guaranteed by the Idaho Guarantee Association, but is protected by the insurance policy referenced above.

**Iowa:** The General Provisions section, Termination Refund and Retained Charges clause is amended as follows: Add the following:  If You cancel the Contract, We shall mail a written notice of termination to You within fifteen (15) days of the date of the termination. A ten percent (10%) penalty shall be added each month to a refund that is not paid to You within thirty (30) days of the return of the Contract to Us.

**Massachusetts:** Notice to consumer: The benefits provided may duplicate express manufacturer's or seller's warranties that come automatically with every sale. You can be required by the seller of this contract to pursue those warranties which are available to You without this agreement.

**Missouri:** Under the General Provisions section, the Contract Insured By clause, the first sentence is deleted in its entirety.

**Nevada:** The cancellation fee will be charged only if You request cancellation of this Contract.

**New Hampshire:** In the event that You do not receive satisfaction under this Contract, You may contact the New Hampshire Insurance Department at 800-852-3416 or by mail: New Hampshire Insurance Department, 21 South Fruit Street, Suite 14, Concord, NH 03301. No processing charge or transfer fee may be assessed in conjunction with the termination or transfer of this Contract.

**New Mexico:** Under the General Provisions section, the Termination Refund and Retained Charges clause the following sentence is deleted:  The Administrator may terminate this Contract for nonpayment of the Contract Price or for any material misrepresentation.  It is replaced with the following:

No service contract that has been in effect for at least seventy (70) days may be cancelled by the provider before the expiration of the agreed term or one (1) year after the effective date of the service contract, whichever occurs first, except on any of the following grounds: 1) failure by the holder to pay any amount due; 2) conviction of the holder of a crime that results in an increase in the service required under the service contract; 3) discovery of fraud or material misrepresentation by the holder in obtaining the service contract or in presenting a claim for service thereunder; or, 4) discovery of either of the following if it occurred after the effective date of the service contract and substantially and materially increased the service required under the service contract: a. an act or omission by the holder; or b. a violation by the holder of any condition of the service contract.

No cancellation of a service contract may become effective until at least fifteen (15) days after the notice of cancellation is mailed to the holder.

**New York:** The General Provisions section, Termination Refund and Retained Charges clause is amended to read as follows: In the event of cancellation of the vehicle service contract by You, or in the event of a bona fide repossession or total loss of Your Approved Vehicle, We agree as follows:
1. If this Contract is terminated within sixty (60) days of the contract date, the total amount paid by You for this Contract will be refunded provided no repair work has been performed or commenced;
2. On vehicles purchased with a Term of over 48,000 miles, after the first sixty (60) days or if repair work has been performed or commenced, the refund will be calculated pro rata based on the months or mileage elapsed since the Contract written date, whichever is greater, deducting a cancellation fee not to exceed the lesser of ten percent (10%) of the Contract Price or fifty dollars ($50);
3. On vehicles purchased with a Term of 48,000 miles or less, after the first 60 (sixty) days, or if repair work has been performed or commenced, the refund will be calculated on a reverse rule of 78's based on the months or mileage elapsed since the Contract written date, whichever is greater, deducting a cancellation fee not to exceed the lesser of ten percent (10%) of the Contract Price of fifty dollars ($50).

A ten percent (10%) penalty shall be added to a refund that is not made within thirty (30) days of return of the Contract to Us. The provisions of this subsection shall apply only to the original purchaser of the service contract.

**Texas:** Unresolved complaints may be directed to the Texas Department of Licensing and Regulation, P.O. Box 12157, Austin, TX 78711, 512-463-2906 or 800-803-9202.

The General Provisions section, Contract Insured by clause, the following shall be added: You may apply for reimbursement directly to Heritage Indemnity Company if a refund or credit is not paid before the forty-sixth (46th) day after the date on which the Contract is returned to Us.

**Wyoming:** The following is added to the General Provisions section, Termination Refund and Retained Charges clause: A ten percent (10%) penalty per month shall be added to a refund that is not paid or credited within forty-five (45) days of the return of the Contract.

# EXHIBIT "D"

CARFAX Vehicle History Report on KNAGD128145274373                    Page 1 of 5

**For Personal Use Only**
For Personal Use Only



**2004 KIA OPTIMA LX/EX**
VIN: ███████4373
SEDAN 4 DR
2.7L V6 FI DOHC 24V
FRONT WHEEL DRIVE

No accident / damage reported to CARFAX

⚠ Potential odometer rollback indicated

**4** Previous owners

**3** Service records available



Search for other          in
Philadelphia, PA

Personal vehicle

**$400** Below retail book value

This CARFAX Vehicle History Report is based only on          supplied to CARFAX and available as of 6/29/11 at 9:57:52 PM (EDT).
Other information about this vehicle, including problems, may not have been reported to CARFAX. Use this report as one important tool,
along with a vehicle inspection and test drive, to make a better decision about your next used car.

$          0                    $400



| Year purchased | 2005 | 2006 | 2010 |
|---|---|---|---|
| Type of owner | Personal | Personal | Personal |
| Estimated length of ownership | 1 yr. 4 mo. | 2 yrs. 3 mo. | 1 yr. 5 mo. |
| Owned in the following states/provinces | Pennsylvania | Pennsylvania, Virginia | Pennsylvania |
| Estimated miles driven per year | --- | --- | --- |
| Last reported odometer reading | 56,009 | --- | --- |

http://www.carfax.com/organizer/generateReport.cfx                    6/29/2011

CARFAX Vehicle History Report on KNAGD128145274373          Page 2 of 5



| | | | |
|---|---|---|---|
| Savage \| Junk \| Rebuilt \| Fire \| Flood \| Hail \| Lemon | No Problem | No Problem | No Problem |
| Not Actual Mileage \| Exceeds Mechanical Limits | No Problem | No Problem | No Problem |

- None of these major title problems were reported by a state Department of Motor Vehicles (DMV). If you find that any of these title problems were reported by a DMV and not included in this report, CARFAX will buy this vehicle back.

| | | | |
|---|---|---|---|
| Total Loss<br>No total loss reported to CARFAX. | No Issues Reported | No Issues Reported | No Issues Reported |
| Structural / Frame Damage<br>No structural / frame damage reported to CARFAX. | No Issues Reported | No Issues Reported | No Issues Reported |
| Airbag Deployment<br>No airbag deployment reported to CARFAX. | No Issues Reported | No Issues Reported | No Issues Reported |
| Odometer Rollback<br>Potential odometer rollback indicated. | No Issues Indicated | ⚠ Potential Rollback | ⚠ Inconsistent Reading |
| Accident / Damage<br>No accidents or damage reported to CARFAX. | No Issues Reported | No Issues Reported | No Issues Reported |
| Manufacturer Recall<br>No open recalls reported to CARFAX. | No Recalls Reported | No Recalls Reported | No Recalls Reported |
| Basic Warranty<br>estimated to have expired. Interested in an<br>? | **Warranty Expired** | **Warranty Expired** | **Warranty Expired** |



**Looking for other 2004 KIA OPTIMA LX/EX vehicles like this one in your area?**
Search        for an up-to-date list of vehicles in your area, all with the CARFAX Buyback Guarantee!

---

Click For Coupon

---



| Date: | Mileage: | Source: | Comments: |
|---|---|---|---|
| 03/18/2005 | 55,787 | Pennsylvania<br>Motor Vehicle Dept.<br>Coatesville, PA<br>Title #61597857BI01 | Title issued or updated<br>First owner reported<br>Registered as<br>personal vehicle |

CARFAX Vehicle History Report on KNAGD128145274373                    Page 3 of 5

| Date: | Mileage: | Source: | Comments: |
|-------|----------|---------|-----------|
| 01/30/2006 | 56,009 | Pennsylvania Motor Vehicle Dept. Philadelphia, PA | Vehicle purchase reported |
| 03/27/2006 | | Pennsylvania Motor Vehicle Dept. Coatesville, PA Title #61597857ME02 | Title issued or updated Dealer took title of this vehicle while it was in inventory |

| Date: | Mileage: | Source: | Comments: |
|-------|----------|---------|-----------|
| 05/01/2006 | | Pennsylvania Motor Vehicle Dept. Philadelphia, PA Title #61597857MU03 | Title issued or updated New owner reported |

| Date: | Mileage: | Source: | Comments: |
|-------|----------|---------|-----------|
| 08/08/2006 | 59,007 | Pennsylvania Motor Vehicle Dept. Philadelphia, PA | Vehicle purchase reported |
| 11/27/2006 | | Pennsylvania Motor Vehicle Dept. Philadelphia, PA Title #61597857SH04 | Title issued or updated New owner reported |
| 03/07/2007 | | Pennsylvania Motor Vehicle Dept. Philadelphia, PA Title #61597857SH04 | Title issued or updated Loan or lien reported |
| 10/09/2008 | 33,598 | Virginia Motor Vehicle Dept. Buffalo, NY | Title issued or updated Vehicle repossessed |

There are signs of potential odometer rollback here, so verify the mileage with the seller. I know I would.

CAR FOX

| Date: | Mileage: | Source: | Comments: |
|-------|----------|---------|-----------|
| 12/01/2008 | 33,600 | Auto Auction | Listed as a fleet vehicle Sold at auction in Pennsylvania |
| 12/06/2008 | 33,604 | Kia Of West Chester West Chester, PA 610-429-3500 | Maintenance inspection completed Washed/detailed Safety inspection performed Emissions inspection performed |
| 12/06/2008 | 33,609 | Online Listing | Vehicle offered for sale |
| 01/07/2009 | | Kia Of West Chester West Chester, PA 610-429-3500 | Vehicle sold |
| 01/07/2009 | | Pennsylvania Motor Vehicle Dept. Brookhaven, PA | Vehicle purchase reported |

CARFAX Vehicle History Report on KNAGD128145274373                    Page 4 of 5

| | | | |
|---|---|---|---|
| 10/23/2009 | 63,600 | Pennsylvania<br>Motor Vehicle Dept.<br>West Chester, PA<br>Title #61597857DJ05 | Title issued or updated<br>Dealer took title of this vehicle<br>while it was in inventory |
| 01/13/2010 | | Pennsylvania<br>Motor Vehicle Dept.<br>West Chester, PA<br>Title #61597857DJ05 | Title issued or updated<br>Dealer took title of this vehicle<br>while it was in inventory<br>Duplicate title issued |

| Date: | Mileage: | Source: | Comments: |
|---|---|---|---|
| 01/22/2010 | | Pennsylvania<br>Motor Vehicle Dept.<br>Brookhaven, PA<br>Title #61597857SA06 | Title issued or updated<br>Registration issued or renewed<br>New owner reported |
| 01/23/2010 | 44,568 | Kia Of West Chester<br>West Chester, PA<br>610-429-3500 | Oil and filter changed chassis lubricated<br>Exterior lights checked<br>Safety inspection performed<br>Emissions inspection performed<br>INCONSISTENT ODOMETER READING |

It's tough to tell whether this is a sign of an odometer rollback or just a clerical error. Your best move is to get a mechanic or the seller to confirm the mileage.

| | | | |
|---|---|---|---|
| 02/24/2010 | 44,570 | Kia Of West Chester<br>West Chester, PA<br>610-429-3500 | Maintenance inspection completed<br>State inspection completed<br>Four tires mounted and balanced |
| 12/12/2010 | | Pennsylvania<br>Motor Vehicle Dept.<br>Philadelphia, PA<br>Title #61597857SA06 | Title issued or updated<br>Registration updated when owner moved<br>the vehicle to a new location |
| 03/21/2011 | | Pennsylvania<br>Motor Vehicle Dept.<br>Philadelphia, PA<br>Title #61597857SA06 | Registration issued or renewed |
| 06/29/2011 | | Kia Motors America,<br>Inc. | No open recalls reported |

Have Questions? Please visit our Help Center at



**First Owner**
When the first owner(s) obtains a title from a Department of Motor Vehicles as proof of ownership.

**Ownership History**
CARFAX defines an owner as an individual or business that possesses and uses a vehicle. Not all title transactions represent changes in ownership. To provide estimated number of owners, CARFAX proprietary technology analyzes all the events in a vehicle history. Estimated ownership is available for vehicles manufactured after 1994 and titled solely in the US including Puerto Rico.

Dealers sometimes opt to take ownership of a vehicle and are required to in the following states: Maine, Massachusetts, New Jersey, Ohio, Oklahoma, Pennsylvania and South Dakota. Please consider this as you review a vehicle's estimated ownership history.

**New Owner Reported**
When a vehicle is sold to a new owner, the Title must be transferred to the new owner(s) at a Department of Motor Vehicles.

**Repossession**
When a repossession occurs a vehicle owner fails to make loan payments, and the financial institution holding the title takes possession of the vehicle.

**Odometer Rollback**
If a more recent odometer reading is less than an older reading, then the odometer may have been tampered with and "rolled back." CARFAX analyzes the mileage history and the sources of this information to indicate a potential odometer rollback.

**Mileage Inconsistency**
If a more recent odometer reading is less than an older reading but CARFAX is uncertain whether the discrepancy is a rollback or a clerical error, then CARFAX calls it a "Mileage Inconsistency". In this case, you should verify the mileage with your dealer or a qualified mechanic.

**Title Issued**
A state issues a title to provide a vehicle owner with proof of ownership. Each title has a unique number. Each title or registration record on a CARFAX report does not necessarily indicate a change in ownership. In Canada, a registration and bill of sale are used as proof of ownership.

**CARFAX History Impact™**
Accidents, service records, number of owners and many other history factors can affect a vehicle's value. The CARFAX History Impact is a tool that analyzes millions of used car transactions to measure how the combination of all the information reported to CARFAX affects the value of a particular vehicle. The vehicle's retail book value plus the CARFAX History Impact will give you a more accurate measure of the vehicle's value. Use this tool, along with a vehicle inspection and test drive, to make a better decision about your next used car.

"I only trust CARCHEX for my vehicle protection. You should too."

CARFAX DEPENDS ON ITS SOURCES FOR THE ACCURACY AND RELIABILITY OF ITS INFORMATION. THEREFORE, NO RESPONSIBILITY IS ASSUMED BY CARFAX OR ITS AGENTS FOR ERRORS OR OMISSIONS IN THIS REPORT. CARFAX FURTHER EXPRESSLY DISCLAIMS ALL WARRANTIES, EXPRESS OR IMPLIED, INCLUDING ANY IMPLIED WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE. CARFAX®
© 2011 CARFAX, Inc., an R.L. Polk & Co. company. All rights reserved.
Covered by United States Patents Nos. 7,113,853; 7,505,838 and 7,596,512.
6/29/11 9:57:52 PM (EDT)