IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

C. DOV SACKS                           :          CIVIL ACTION
                                       :          NO. 12-284
        v.                             :
                                       :
DJA AUTOMOTIVE d/b/a                    :
KIA OF WEST CHESTER                     :
                                       :


O'NEILL, J.                                        January 18, 2013

## MEMORANDUM

Now before me are a motion for summary judgment filed by defendant DJA Automotive

d/b/a Kia of West Chester (Dkt. No. 9), plaintiff C. Dov Sacks's opposition (Dkt. No. 11),

defendant's reply (Dkt. No. 12), defendant's supplemental memorandum of law (Dkt. No. 24)

and plaintiff's supplemental response (Dkt. No. 27).  I will deny defendant's motion for summary

judgment for the reasons that follow.

Also before me are plaintiff's motion for leave to file an amended complaint (Dkt. No.

18), defendant's response thereto (Dkt. No. 19), and plaintiff's reply (Dkt. No. 21).  As is further

set forth below, I will grant plaintiff's motion for leave to file an amended complaint.

## BACKGROUND

This matter arises out of plaintiff's January 7, 2009 purchase of a pre-owned 2004 Kia

Optima EX V6 from defendant.  Plaintiff contends that he was "persuaded to purchase this

Optima vehicle[ ] 2004 model[,] rather than a 2006 model with higher mileage[,] in reliance on

the representation that the Optima had low mileage of approximately 33,609 miles."  Dkt. No. 11

at ECF p. 11.  A CarFax vehicle history report that plaintiff purchased for the Optima on June 29,

2011, however, noted that the Optima had signs of mileage inconsistency or a potential odometer

rollback.  Dkt. No. 1 at ECF p. 23-27.  As a result, plaintiff's complaint asserts claims against

defendant under the Federal Motor Vehicle and Cost Saving Act (the Odometer Act), 49 U.S.C.

§ 32701 et seq., the Pennsylvania Odometer Law, 75 Pa. Cons. Stat. Ann. § 7134, the

Pennsylvania Unfair Trade Practices and Consumer Protection Law (UTPCPL), 73 Pa. Cons.Stat.

Ann. § 201–1, et. seq., and a claim for breach of warranty pursuant to Pa. Cons. Stat. Ann. 13

Pa.C.S. § 2313.  See Dkt. No. 1.  Also, in plaintiff's motion for leave to file an amended

complaint, he seeks to add a claim for fraud.  See Dkt. No. 18.

According to a January 21, 2009 warranty history inquiry for the Optima, the vehicle's

production date was September 4, 2003 and its retail and warranty start date was February 10,

2005.  Dkt. No. 9-4 at ECF p. 40.  The warranty report notes a "retail mileage" of 55 miles.  Id.

Eugene Bivens, the Optima's first owner, entered into a contract to purchase the Optima with

Value Kia in Philadelphia, Pennsylvania on February 10, 2005.  Dkt. No. 24-1 at ECF p. 5.  The

retail installment contract lists the Optima's mileage at purchase as 55,787 miles, not 55 miles.

Id.  Eugene Bivens's trade-in for the Optima was a 2004 Nissan Maxima with 55,787 miles.  Id.

at ECF p. 10.  When Value Kia prepared an application to the Commonwealth of Pennsylvania

for a Pennsylvania title – an MV-1 form – for the Optima on February 10, 2005, Value Kia listed

the Optima's mileage as 55,787 miles.  Id. at ECF p. 6.  Defendant contends that Value Kia

"listed the [Optima's] mileage incorrectly on the retail installment contract and MV-1."  Dkt. No.

24 at ECF p. 6.

The Optima had repairs performed under warranty four times between April 28, 2005 and

July 25, 2006.  Dkt. No. 9-4 at ECF p. 39.  When the Optima was serviced under warranty on

April 28, 2005, its mileage was listed as 2,770 miles.  Id.  A secure power of attorney signed by

Eugene Bivens on June 16, 2005 notes a mileage of 4,196 miles for the Optima.  Dkt. No. 24-1 at ECF p. 13.  A September 20, 2005 odometer statement prepared for the Optima by Value Kia also lists the mileage as 4,196 miles.  Id. at ECF p. 14-15.

On January 30, 2006, Value Kia prepared an odometer disclosure listing the mileage at 10,117 miles.  Id. at ECF p. 16.  On the same day, Elizabeth Muavero entered into a contract to purchase the Optima that also listed the mileage at 10,117 miles.  Id. at ECF p. 17.  Service records for the Optima show its mileage as 11,571 miles on February 28, 2006, 13,011 miles on March 28, 2006, and 15,173 miles on May 9, 2006.  Id. at ECF p. 22-26.  Repair orders submitted for Muavero on May 19, 2006 and July 11, 2006 listed the Optima as having 15,294 and 18,379 miles, respectively.  Id. at ECF p. 29-30.  Muavero signed an odometer disclosure statement for the Optima on July 25, 2006 noting an odometer reading of 18,995 miles.  Id. at ECF p. 31.  The Pennsylvania title issued to Muavero on May 1, 2006, however, listed the Optima as having 55,009 miles.  Id. at ECF p. 27.

On August 8, 2006, Ruby Shedrick executed a Buyers Order that stated that the Optima had 19,007 miles.  Id. at ECF p. 32.  A Borrowed Vehicle Agreement executed on the same day also listed a mileage of 19,007 miles.  Id. at ECF p. 33.  A certified assignment of title between Metro Auto Sales d/b/a/ Value Kia and Ruby Shedrick dated August 6, 2006, however, appears to indicate a mileage of 59,007 miles.  Dkt. No. 27-9 at ECF p. 2.

On October 9, 2008, the Commonwealth of Virginia issued a title for the Optima to Flagship Credit Corporation.  Dkt. No.  24-1 at ECF p. 34.  The Virginia title listed the Optima's mileage as 33,598 miles.  Id.

On December 5, 2008, defendant purchased the Optima at the Manheim Auto Auction

and an odometer disclosure statement prepared by Flagship Credit Corporation certified that the

actual mileage of the Optima was 33,600 miles.  Dkt. No. 9-5 at ECF p. 1.  On December 26,

2008, in order to obtain a Pennsylvania title for the vehicle, defendant submitted to the

Commonwealth of Pennsylvania an MV-1 form listing the Optima's mileage as 33,600 miles.

Dkt. No. 9-5 at ECF p. 5.  Defendant did not mark an odometer discrepancy box on the form.  Id.

Defendant's title clerk testified that PennDOT initially rejected the MV-1.  Dkt. No. 27-12 at

24:4-25:4.

On January 7, 2009, plaintiff visited defendant's car dealership after contacting Karen

Wotasek Halloran, a saleswoman at defendant's dealership, about a 2006 Kia Optima with

51,000 miles.  Dkt. No. 27-2 at 11:19-12:14.  Prior to plaintiff's visit to the dealership, he also

viewed an internet advertisement for the Optima listing its mileage as 33,609 miles.  Dkt. No. 27-

1 at ECF p. 12.  Plaintiff testified that when "[he] was looking at the Kia website [he] did note

that [the Optima] was Carfax certified on the website. . . . But [he] did not ask for [a CarFax

report] and had never seen one" when he purchased the vehicle.  Dkt. No. 27-2 at 28:10-17.

In contrast to plaintiff's testimony, Halloran testified that she pulled a CarFax report on

the Optima on January 7, 2009.[1]  At her deposition, she recalled that the CarFax report included

---

[1]     Defendant's corporate designee indicated that she was unaware as to whether
defendant had pulled a CarFax report for the Optima prior to plaintiff's purchase of the vehicle.
Dkt. No. 27-18 at ECF p. 3, 64:17-22. Jim Sipala, the owner of the dealership also stated that he
was unaware of whether or when defendant might have pulled a CarFax report for the Optima.
Dkt. No. 27-5 at ECF p. 3, 21:1-9.
        CarFax's designee testified that its systems showed that the CarFax account belonging to
defendant had been used to pull two CarFax reports prior to selling the car to plaintiff.  Dkt. No.
27-19 at ECF p. 6, 15:2-7.  According to CarFax, the first report was pulled on December 9,
2008.  Id.  The second report was pulled on January 7, 2009, when plaintiff purchased the car.
Id.  According to CarFax, each of these reports would have shown an "odometer discrepancy data
flag."  Dkt. No. 27-19 at ECF p. 17, 58:8-60:17.

an odometer discrepancy warning and she noted that

> I did explain to [plaintiff] the odometer discrepancy that was on there because a brand new car cannot be sold with 55,000 miles on it.  So I explained that to him that it was a clerical error most likely.  CarFax is not accurate all the time.  It was an easy fix and that was it.

Dkt. No. 27-3 at 16:6-13.  Halloran's files did not contain a copy of the CarFax and she explained at her deposition that "[t]ypically, they are given to the consumer when they purchase the vehicle."  Dkt. No. 27-3 at 17.

When plaintiff went to the dealership on January 7, 2009, he test drove the Optima and looked at its odometer.  Dkt. No. 27-2 at 13:4-6; 23:20-22.  Plaintiff purchased the Optima and drove it home that day.  Id. at 24:14-16.  He purchased the car as a certified pre-owned vehicle, meaning that it had a comprehensive inspection prior to purchase.  Dkt. No. 25-5 at 83:18-84:21.  According to defendant, the certification process did not, however, include verification of whether the vehicle's mileage was accurate.  Id. at 84:22-23.

When plaintiff purchased the Optima, defendant provided him with an odometer disclosure statement on which defendant "state[d] that the odometer mileage listed on the [Optima] now reads 33609 (no tenths) miles and to the best of [defendant's] knowledge that it reflects the actual mileage of the" Optima.  Dkt. No. 27-22.  The document included a notation that "Federal law (and State law, if applicable) requires that you state the mileage upon transfer of ownership.  Failure to complete or providing a false statement may result in fines and/or imprisonment."  Id.  Defendant did not check the box that asked it to certify "THAT THE ODOMETER READING IS NOT THE ACTUAL MILEAGE.  WARNING!  ODOMETER DISCREPANCY."  Id. (emphasis in original).  Plaintiff, as buyer, and defendant, as transferor,

each signed the odometer disclosure statement at the time of purchase.  Id.

When asked how defendant's signatory to the odometer disclosure statement "satisf[ied] himself that he could certify to [33,609 miles] as being the correct odometer reading on" the Optima, defendant's corporate designee testified that he "trusted what we do.  We wouldn't be selling it if it wasn't.  It's right on the odometer.  That's what the title said."  Dkt. No. 27-5 at 82:1-9.  Asked whether he would "have conducted any investigation before [he] signed" an odometer disclosure statement, defendant's general sales manager Thomas Walsh responded "[b]efore I had signed it would I have conducted an investigation?  Probably not, no."  Dkt. No. 27-4 at 41:20-23.

On February 26, 2009 and March 4, 2009, PennDOT sent defendant letters explaining that the title application for the Optima could not be processed because of a mileage discrepancy.  Dkt. Nos. 27-13 and 27-14.  On October 22, 2009, defendant submitted another form MV-1 to PennDOT for the Optima stating that the odometer reading for the vehicle was 33,600 miles.  Dkt. No. 27-16.  This time, defendant checked a box indicating that the mileage figure "IS **NOT** THE **ACTUAL MILEAGE/WARNING: ODOMETER DISCREPANCY**."  Id. (emphasis in original).

Plaintiff claims that after he bought the Optima, he did not receive its registration or other paperwork in the mail.  Dkt. No. 27-2 at 24:17-18.  He explained that "in April my temporary registration expired."  Id. at 25:8-9.  He contacted defendant and was told defendant would "get [him] another temporary registration because the title's not ready yet."  Id. at 25:11-13.  In August he was told "there was a clerical problem, a typo . . . with the registration and Kia had never seen this before, it was a freak thing, and they're doing everything they could and its very

frustrating for them and bear with us." Id. at 25:17-24.  He was told that the typo related to the mileage for the Optima.  Id. at 26:3-4.

On January 13, 2010, the Commonwealth of Pennsylvania issued a title to defendant showing 33,600 miles as the mileage for the Optima.  Dkt. No. 9-5 at ECF p. 30.

On June 29, 2011, plaintiff obtained a CarFax report for the Optima.  Dkt. No. 1 at ECF p. 23-27.  The CarFax report noted that there was a January 30, 2006 record from the Pennsylvania Motor Vehicle Department reflecting that the vehicle odometer read 56,009 miles, a higher mileage figure than reflected in subsequent entries.  Id. at ECF p. 25.  In conjunction with an October 9, 2008 entry related to the issuance of the Virginia title, the report suggests that "because there are signs of potential odometer rollback," any prospective purchaser should "verify the mileage with the seller."  Id.  In conjunction with a January 23, 2010 record related to a service visit at Kia of West Chester, the report notes an "inconsistent odometer reading" and explains that "it's tough to tell whether this is a sign of an odometer rollback or just clerical error.  Your best move is to get a mechanic or the seller to confirm the mileage."  Id. at ECF p. 26.  With respect to odometer rollback, the report explains that "[i]f a more recent odometer reading is less than an older reading, then the odometer may have been tampered with and 'rolled back.'  CARFAX analyzes the mileage history and the sources of this information to indicate a potential odometer rollback."  Id. at ECF p. 27.  With respect to mileage inconsistency, the report explains that "if a more recent odometer reading is less than an older reading but CARFAX is uncertain whether the discrepancy is a rollback or clerical error, then CARFAX calls it a 'Mileage Inconsistency.'  In this case you should verify the mileage with your dealer or a qualified mechanic."  Id.  In the report, CarFax disclaims responsibility for errors because it

"depends on its sources for the accuracy and reliability of its information."  Id.

## DISCUSSION

### I.      Jurisdiction

As an initial matter, I will address defendant's request in its motion for summary judgment that I dismiss plaintiff's complaint for lack of jurisdiction.  Defendant argues that the Court should require arbitration of this matter under the arbitration provision in the contract to purchase the Optima.  The buyers' order for the vehicle included a clause that reads:

> Any claim or dispute, whether in contract, tort, statute or otherwise
> . . . between you and us or our employees, agents, successors or
> assigns, which arise [sic] out of or relate [sic] to your credit
> application, purchase or condition of this vehicle, this contract or
> any resulting transaction or relationship . . . shall, at your or our
> election, be resolved by neutral binding arbitration and not by a
> court action.

Dkt. No. 9-5 at ECF p. 6.  Plaintiff contends that defendant has waived its right to arbitrate by not asking the Court to enforce the arbitration provision in the agreement until after undertaking discovery and in conjunction with its motion for summary judgment.  I agree with plaintiff.

"Waiver is not favored."  Hoxworth v. Blinder, Robinson & Co., Inc., 980 F.2d 912, 926 (3d Cir. 1992), citing Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25 (1983).  "[P]rejudice is the touchstone for determining whether the right to arbitrate has been waived."  Hoxworth, 980 F.2d at 925.  Six factors guide my prejudice inquiry:  1) timeliness or lack thereof of a motion to arbitrate; 2) the extent to which defendant has contested the merits of plaintiff's claims; 3) whether defendant informed plaintiff of its intent to pursue arbitration prior to it seeking to enjoin the court proceedings; 4) the extent of defendant's non-merits motion practice; 5) defendant's acquiescence to the Court's pretrial orders; and, 6) the extent to which

the parties have engaged in discovery.  Id. at 926–27 (citation omitted).  "As is evident by our

repeated characterization of [the Hoxworth ] factors as a nonexclusive list, not all the factors

need be present to justify a finding of waiver, and the waiver determination must be based on the

circumstances and context of the particular case."  Nino v. Jewelry Exch., Inc., 609 F.3d 191, 209

(3d Cir. 2010) (internal quotation marks and brackets omitted).  "[T]he investment of

considerable time and money litigating a case may amount to sufficient prejudice to bar a

later-asserted right to arbitrate," since to conclude otherwise might frustrate "the purpose behind

arbitration itself – arbitration is meant to streamline the proceedings, lower costs, and conserve

private and judicial resources."  Id.

> "[W]here a party fails to demand arbitration during pretrial
> proceedings, and, in the meantime, engages in pretrial
> activity inconsistent with an intent to arbitrate, the party
> later opposing . . . arbitration may more easily show that its
> position has been compromised, i.e. prejudiced," because
> under these circumstances [the Court] can readily infer that
> the party claiming waiver has already invested considerable
> time and expense in litigating the case in court and would be
> required to duplicate its efforts, to at least some degree, if
> the case were now to proceed in the arbitral forum.  Prejudice
> of this sort is not mitigated by the absence of substantive
> prejudice to the legal position of the party claiming waiver.

Ehleiter v. Grapetree Shores, Inc., 482 F.3d 207, 221 (3d Cir. 2007), quoting Hoxworth, 980 F.2d

at 926.

Plaintiff filed his complaint on January 18, 2012.  Dkt. No. 1.  Defendant did not move to

dismiss the complaint for lack of subject matter jurisdiction.  Instead, in its answer filed on

February 29, 2012, defendant asserted the following affirmative defense:  "The contract upon

which plaintiff's claims are based contains an arbitration clause and therefore, respectfully, this

Honorable Court lacks jurisdiction." Dkt. No. 6 at ECF p. 7. Thereafter, defendant elected not to file a motion to compel arbitration. Instead, defendant deposed plaintiff on April 30, 2012, see Dkt. No. 11-3, engaged in other discovery and, on May 16, 2012, filed a motion for summary judgment in which it asserted the Court's lack of subject matter jurisdiction pursuant to the arbitration agreement as an alternative defense to plaintiff's claims. Dkt. No. 9. Arguing that defendant's summary judgment motion was premature and that defendant had waived its right to arbitration, plaintiff responded to the motion on June 4, 2012. Dkt. No. 11. In its June 13, 2012 reply thereto, defendant asserted that it had not waived its right to arbitration, but did not ask the Court to compel arbitration. Dkt. No. 12. Defendant again sought dismissal in favor of private, binding arbitration only if the Court declined to grant summary judgment in its favor. Id. at ECF p. 9.

Also on June 13, 2012, plaintiff served a subpoena on CarFax for a deposition and document production. Defendant moved to quash the subpoena, but did not object to the subpoena on the basis that it was seeking to exercise its right to resolve plaintiff's claims in arbitration instead of in this Court. Dkt. No. 13. I allowed the parties additional time to complete discovery and the parties stipulated to the filing of supplemental briefs with respect to the summary judgment motion. Dkt. Nos. 17, 20. Thereafter, plaintiff filed a motion for leave to file an amended complaint, Dkt. No. 18, and defendant filed a response objecting to plaintiff's requested amendments. Dkt. No. 19. Defendant filed a supplemental memorandum in support of its motion for summary judgment on October 4, 2012, Dkt. No. 24, and plaintiff filed his response in opposition thereto on October 19, 2012. Dkt. No. 27. On October 23, the parties participated in a settlement conference before Magistrate Judge L. Felipe Restrepo. Dkt. No. 23.

Arbitration under the parties' agreement is not mandatory.  Dkt. No. 9-5 at ECF p. 6.

Defendant made an effort to preserve its arbitration rights by asserting its right to arbitrate as an

affirmative defense, Dkt. No. 6 at ECF p. 7, and by seeking dismissal in favor of arbitration in

the context of its motion for summary judgment.  Dkt. No. 9 at ¶¶ 27-34.  Defendant, however,

seeks to have both its proverbial cake and to eat it too:  it only wants arbitration if it does not win

on summary judgment.  Taken together, I find that defendant's failure to move to compel

arbitration, its motion for summary judgment seeking dismissal of plaintiff's claims on their

merits and its participation in discovery and settlement negotiations are sufficient to constitute a

waiver of its right to elect arbitration.  By choosing not to compel arbitration after plaintiff filed

his complaint, defendant has obligated plaintiff to defend his case on its merits in this Court and

has imposed unnecessary expense and delay on plaintiff.  See In re Pharm. Benefit Managers

Antitrust Litig.,700 F.3d 109, 121 (3d Cir. 2012) ("If [the defendant] had moved to compel

arbitration immediately after the filing of the complaint, Plaintiffs would have been spared the

time and expense of litigating for the next ten months because they would [ ] have proceeded in

arbitration and never would have had to face [the defendant's] various motions, including its

comprehensive motion to dismiss.").  This expense and delay would only be compounded if

plaintiff were now required to arbitrate his claims.  Defendant cannot retain its right to elect

arbitration as an insurance policy to be exercised in the event that it does not obtain a favorable

decision on summary judgment.  See id. at *122, quoting Gray Holdco, Inc. v. Cassady, 654 F.3d

444, 453 (3d. Cir. 3022) (holding that a party "'should not be allowed to delay its demand for

arbitration and use federal court proceedings to test the water before taking a swim'") (alterations

omitted); In re Mirant Corp., 613 F.3d 584, 590 (5th Cir. 2010) (finding waiver where the

defendant, who had not moved to compel arbitration, was "attempt[ing] to game the system by seeking a decision on the merits while keeping the arbitration open as a backup plan in case the effort fails"); Hooper v. Advance Am., 589 F.3d 917, 922 (8th Cir. 2009) (finding waiver where the defendant "wanted to see how the case was going in federal district court before deciding whether it would be better off there or in arbitration") (alterations omitted). Because I find that defendant has waived its rights to arbitration, I decline to dismiss plaintiff's complaint for lack of jurisdiction.

## II.    Summary Judgment

The party moving for summary judgment has the burden of demonstrating that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  If the movant sustains its burden, the nonmovant must set forth facts demonstrating the existence of a genuine dispute.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).  A dispute as to a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Id.  A fact is "material" if it might affect the outcome of the case under governing law.  Id.  The "existence of disputed issues of material fact should be ascertained by resolving all inferences, doubts and issues of credibility against" the movant.  Ely v. Hall's Motor Transit Co., 590 F.2d 62, 66 (3d Cir. 1978) (citations and quotation marks omitted).

To establish "that a fact cannot be or is genuinely disputed," a party must:

> (A) cit[e] to particular parts of materials in the record, including
> depositions, documents, electronically stored information,
> affidavits or declarations, stipulations (including those made for
> purposes of the motion only), admissions, interrogatory answers, or
> other materials; or

> (B) show[ ] that the materials cited do not establish the absence or
> presence of a genuine dispute, or that an adverse party cannot
> produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).  The adverse party must raise "more than a mere scintilla of evidence in

its favor" in order to overcome a summary judgment motion and cannot survive by relying on

unsupported assertions, conclusory allegations, or mere suspicions.  Williams v. Borough of

W. Chester, 891 F.2d 458, 460 (3d Cir. 1989).  Summary judgment will be granted "against a

party who fails to make a showing sufficient to establish the existence of an element essential to

that party's case, and on which that party will bear the burden of proof at trial."  Celotex, 477

U.S. at 322.

### A.    Federal and State Odometer Laws

Defendant moves for summary judgment on plaintiff's claims under the Odometer Act

and the Pennsylvania Odometer Law.  Under the Odometer Act, "[t]he transferor of an

automobile must disclose to the transferee the accurate mileage set forth on the odometer or, if

the transferor knows that the odometer reading is not accurate, disclose that the actual mileage is

unknown."  Ringenback v. Crabtree Cadillac-Oldsmobile, Inc., 99 F. Supp. 2d 199, 204 (D.

Conn. 2000), citing 49 U.S.C. § 32705(a)(1).  The same obligation applies under the

Pennsylvania Odometer law.  75 Pa. C.S. § 7134(6)(iii) ("if the transferor knows that the

odometer reading differs from the number of miles or kilometers the vehicle has actually traveled

and that the difference is greater than that caused by odometer calibration error, he shall include a

statement that the odometer reading is not the actual mileage and should not be relied upon").  A

private party, however, can bring an action for failure to comply with the odometer disclosure

requirements only where the transferor acted "with intent to defraud."  49 U.S.C. § 32710(a); 75

Pa. C. S.§ 7138(a).  In order to prevail on his claims under the Odometer Act and the Pennsylvania Odometer Law, plaintiff must thus establish "two essential elements: (1) a violation of the [ ] odometer disclosure requirements . . . , and (2) an intent to defraud." Diersen v. Chi. Car. Exch., 110 F.3d 481, 487 (7th Cir. 1997) (citation omitted).  A plaintiff who can establish a claim under the Odometer Act is entitled to recover "3 times [his] actual damages or $1,500,[2] whichever is greater" and "costs and a reasonable attorney's fee." 49 U.S.C. § 32710.  In the case of a successful action under the Pennsylvania Odometer Law, a plaintiff can recover an "amount equal to the sum of three times the amount of actual damages sustained or $3,000, whichever is the greater, and . . . the costs of the action together with reasonable attorney fees as determined by the court." 75 Pa. Cons. Stat. § 7138.

With respect to the first element required to establish defendant's liability, I need not reach the question of whether the evidence before me on summary judgment is sufficient to demonstrate that the mileage on the Optima's odometer was in fact inaccurate at the time of its sale to plaintiff, an issue disputed by the parties.  See, e.g. Nigh v. Koons Buick Pontiac GMC, Inc., 143 F. Supp. 2d 535, 546 (E.D. Va. 2001) (declining to grant summary judgment in favor of defendant even though plaintiff conceded that the odometer on his vehicle had not been rolled back because material questions of fact remained as to whether defendant acted with an intent to defraud in failing to comply with the technical requirements of the Odometer Act).  Instead, I find that the facts before me evidence defendant's violation of the odometer disclosure requirements because defendant did not:  a) disclose to plaintiff prior to his purchase that there

---

[2]    Pursuant to an amendment enacted in the Motor Vehicle and Highway Safety Improvement Act of 2012, Pub. L. No. 112-141, § 31206, 126 Stat. 405 (2012), this amount is set to increase to $10,000.

was reason to believe that the Optima's odometer could be inaccurate or b) further investigate the

Optima's mileage to confirm its accuracy once it was on notice of a potential odometer

discrepancy.

> Once a dealer has notice of grounds for suspecting an odometer's
> inaccuracy, the law imposes on him a duty of further inquiry.  The
> dealer must then investigate the facts in order to ascertain whether
> the odometer's mileage reading is reliable, before certifying it as
> such; or, if he chooses not to do this, then he is legally bound to
> inform the customer that he suspects the odometer is incorrect and
> that it should not be relied upon.

Oettinger v. Lakeview Motors, Inc., 675 F. Supp. 1488, 1493 (E.D. Va. 1988) (citations omitted).

"[P]at indifference to the odometer's accuracy ignores the purpose and requirements of the

federal statute.  The statute is designed to compel used car dealers to inquire into the facts,

especially into the chain of title documents listing the car's purported mileage."  Id., at 1495.

"The legislative history of the Act clearly imposes an affirmative duty on the dealer to adopt

practices reasonably designed to uncover incorrect odometer readings."  Heffler v. Joe Bells Auto

Service, 946 F. Supp. 348, 352 (E.D. Pa. 1996); see also Suiter v. Mitchell Motor Coach Sales,

Inc., 151 F.3d 1275, 1284 (10th Cir. 1998) ("[A]n automobile dealer cannot escape liability

under the Odometer Act by relying solely on the odometer reading and the assertions of the

previous owner."); cf. Perez v. Z Frank Oldsmobile, Inc., 223 F.3d 617, 620 (7th Cir. 2000)

(finding plaintiff's claim under § 32710(a) was supported where the dealer "should have figured

out from General Motors' warranty records, which maintenance workers accessed by computer,

that a rollback had occurred" when the car belonged to a previous owner).  "[A] car dealership[ ]

obviously possesses greater acumen when evaluating the condition of an automobile than most of

its customers."  Heffler, 946 F. Supp. at 353 (noting further that "[t]he plaintiffs trusted the

-15-

salesman and the dealership to conduct a reasonable inspection of the car using their expertise and experience").  Likewise, a dealer has better access to a used vehicle's title history than does a prospective purchaser.

Halloran testified that she saw a CarFax report flagging the Optima as having a potential mileage discrepancy prior to plaintiff's purchase of the vehicle.  Her testimony is evidence that defendant had notice that a more thorough investigation regarding the accuracy of the odometer reading was required prior to making a certification that the odometer was accurate on the odometer disclosure form.  Even if such an investigation would have revealed that the Optima's odometer was in fact accurate, there is no evidence before me to suggest that defendant took any steps to verify the accuracy of the odometer reading after Halloran noted the CarFax flags.  It is the apparent absence of such an investigation prior to the sale of the vehicle to plaintiff that leads me to conclude that defendant's representation that the mileage disclosed reflected the actual mileage of the Optima "to the best of [defendant's] knowledge," Dkt. No. 27-22, was a violation of the Odometer Act.[3]

This conclusion alone, however, will not allow plaintiff to prevail on his Odometer Act

---

[3]      In so holding, I do not find that car dealers have a broad duty to review CarFax reports for the vehicles they sell nor that they have a general duty to disclose information found in CarFax reports.  See Auto Finance Specialists, Inc. v. ADESA Phoenix, LLC, No. 09-0200, 2010 WL 1925491, at *4 (D. Ariz. May 11, 2010) (finding that "a duty to disclose or produce independent third party reports about the history of a vehicle it is selling . . . would be burdensome for sellers and it is simpler and more reliable for buyers to depend on official government-issued documents").  Rather, in this case, defendant's employee testified that she had notice of a potential mileage discrepancy because she had reviewed the CarFax report for the Optima.  Such notice triggered defendant's obligation to further investigate the accuracy of the Optima's odometer reading prior to making the representation on the odometer disclosure form that the mileage disclosed reflected the actual mileage of the Optima "to the best of [defendant's] knowledge."  Dkt. No. 27-22.

and Pennsylvania Odometer Law claims.  See Jones v. Hanley Dawson Cadillac Co., 848 F.2d

803, 806 (7th Cir. 1988) ("[T]he mere fact that an automobile dealer has violated the disclosure

requirements of the Odometer Act does not necessarily mean that he is civilly liable.").  In ruling

on defendant's motion for summary judgment, I must consider whether defendant has shown, as

a matter of law, that it did not act with an intent to defraud plaintiff when it failed to comply with

the odometer disclosure requirements.  See 49 U.S.C. § 32710(a); 75 Pa. C. S.§ 7138(a).  On this

question, I find that issues of material fact preclude summary judgment.

"[T]he plain and ordinary meaning of the phrase 'intent to defraud' envisions conduct

more invidious than mere negligence."  Jones, 848 F.2d at 807 (citation omitted); see also Nelson

v. Cowles Ford, Inc., 77 F. App'x 637 (4th Cir. 2003) ("the phrase 'intent to defraud' requires a

showing of at least gross negligence on the part of the transferor before liability can be

imposed").  "Intent to defraud may be established through proof of a violation of the statute made

with the specific intent to deceive or a reckless disregard for the vehicle's actual mileage."  CDM

Auto Wholesale, Inc. v. Jensen, 31 F. App'x 621, 623 (10th Cir. 2002), citing Haynes v.

Manning, 917 F. 2d 450, 452-53 (10th Cir. 1990).  "Under this standard, a dealer 'may not

consciously avoid learning that the true mileage of a vehicle is not as it appears on the

odometer.'"  Harris v. Jamaica Auto Repair, Inc., No. 03-0417, 2005 WL 1861730, at *4

(E.D.N.Y. Aug. 1, 2005), quoting Auto Sport Motors, Inc. v. Bruno Auto Dealers, Inc., 721 F.

Supp. 63, 66 (S.D.N.Y. 1989); see also Kantorczyk v. New Stanton Auto Auctions, 433 F. Supp.

889, 893 (M.D. Pa. 1977) (holding that the "practice of preparing odometer statements simply on

the basis of the odometer reading and then failing to disclose that the actual mileage is unknown

demonstrates a reckless disregard for the basic purpose of the [Odometer] Act as well as its

-17-

specific requirements").  "Among the factual circumstances that courts have considered in

determining whether a dealer was grossly negligent or reckless in certifying a vehicle's mileage

are the following: the dealer's experience in used car sales, and the vehicle's unreasonably low

mileage in light of its age and/or its interior, exterior or mechanical condition."  Harris, 2005 WL

1861730, at *4 (citation omitted).

Here, facts weighing in favor of finding that defendant did not act with an intent to

defraud include an absence of "evidence showing that [defendant] had any reason to doubt the

accuracy of the odometer reading."  Nabors v. Auto Sports Unlimited, 475 F. Supp. 2d 646, 653

(E.D. Mich. 2007).  The most recent title for the Optima, the Virginia title, noted a mileage of

33,598 miles.  Dkt. No.  24-1 at ECF p. 34.  The odometer disclosure statement prepared by

Flagship Credit Corporation when defendant purchased the Optima at the Manheim Auto

Auction certified that the Optima's was 33,600 miles.  Dkt. No. 9-5 at ECF p. 1.  Further, in

support of its motion for summary judgment, defendant has supplied the Court with an expert

report that concludes that "the documents provided in this case show a definite mileage

progression that indicates the odometer has been functioning and does not show any

discrepancies."  Dkt. No. 24-3 at ECF p. 17.

Facts weighing in favor of finding that defendant acted with an intent to defraud include

Halloran's testimony that she had notice of a potential odometer discrepancy after reviewing the

CarFax, Dkt. No. 27-3 at 16:6-13, coupled with testimony regarding the absence of effort used to

verify the accuracy of the Optima's odometer reading prior to sale.  Dkt. No. 27-5 at 82:1-9; Dkt.

No. 27-4 at 41:20-23.  Where a dealer takes "independent affirmative steps to verify the accuracy

of the odometer reading" and there is evidence that a defendant "did not merely rely on [the

trade-in owner's] assertion regarding the vehicle's mileage," a plaintiff cannot establish an intent to defraud.  CDM Auto Wholesale, Inc. v. Jensen, 31 F. App'x 621, 623 (10th Cir. 2002).  From the evidence now before me, however, defendant's efforts to confirm the Optima's mileage, either before or after Halloran viewed the CarFax report, appear to have been minimal.  "The failure to take any steps to independently verify the accuracy of an odometer reading constitutes reckless disregard for the purposes of the Act."  Suiter v. Mitchell Motor Coach Sales, Inc., 151 F.3d 1275, 1284 (10th Cir. 1998); see also Tusa v. Omaha Auto. Auction Inc., 712 F.2d 1248, 1254 (8th Cir. 1983) (finding an intent to defraud where the defendant "made no effort to obtain any previous disclosure statements" and where the disclosure statement "relied on nothing but the odometer reading.  Because a car buyer can read an odometer the way [defendant] did, a disclosure form based solely on reading the odometer does nothing to give the car buyer additional information."); Oettinger v. Lakeview Motors, Inc., 675 F. Supp. 1488, 1493-94 (E.D. Va. 1988) (holding that the defendant "was under a duty to have the knowledge in question before it certified the odometer reading; the information was peculiarly available to Lakeview as a dealer, and not readily accessible to the buying public; and, very probably, the odometer statement was made in part to induce the sale of the car."); Aldridge v. Billips, 656 F. Supp. 975, 978-79 (W.D. Va. 1987) ("Mere reliance on the odometer reading in the face of other readily ascertainable information from the title and the condition of the truck constitutes a reckless disregard that rises to the level of intent to defraud, as a matter of law.").

It is possible that a trier of fact would find that defendant's failure to verify the accuracy of the Optima's odometer reading before completing the odometer disclosure form was nothing more than negligence and that the defendant lacked an intent to defraud.  There are other record

facts, however, from which a trier of fact could infer an intent to defraud.  See Ringenback v.

Crabtree Cadillac-Oldsmobile, Inc., 99 F. Supp. 2d 199, 206 (D. Conn. 2000) (finding questions

of fact precluded summary judgment where there was conflicting evidence regarding the

defendant's intent in preparing an odometer disclosure statement).  Given that there is a material

question of fact as to whether defendant had the requisite intent to defraud, I will deny

defendant's motion for summary judgment on plaintiff's Odometer Act and Pennsylvania

Odometer Law claims.

### B.    Unfair Trade Practices and Consumer Protection Law

I will also deny defendant's motion for summary judgment with respect to plaintiff's

claim for a violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law,

73 Pa. Cons. Stat. Ann. § 201–1, et. seq.  The UTPCPL is "designed to protect the public from

fraud and deceptive business practices."  Gardner v. State Farm Fire & Cas. Co., 544 F.3d 553,

564 (3d Cir. 2008).  It prohibits marketplace participants from engaging in "unfair methods of

competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."

73 Pa. Cons. Stat. Ann. § 201-3.  To establish his claim for deceptive conduct[4] under the

---

[4]      Plaintiff's complaint alleges that defendant violated the UTCPL through its
"unfair and deceptive acts and practices."  Dkt. No. 1 at ¶ 46, 47.  Defendant argues that the
UTPCPL requires plaintiff to prove the elements of fraud: a misrepresentation of material fact,
scienter, intention by the declarant to induce action, justifiable reliance on the misrepresentation,
and damage to the recipient proximately caused.  See Dkt. No. 24 at ECF p. 13-14, citing Rizzo
v. Michener, 584 A.2d 973, 980 (Pa. Super. Ct. 1990).  I disagree.  Pennsylvania law is not
entirely clear on the issue but "courts in this district have held that the 1996 amendment to the
catch-all provision of the UTPCPL added a prohibition on deceptive conduct that permits
plaintiffs to proceed without satisfying all of the elements of common-law fraud."  Vassalotti v.
Wells Fargo Bank, N.A., 732 F. Supp. 2d 503, 510 n.7 (E.D. Pa. 2010); see also Schnell v. Bank
of N.Y. Mellon, 828 F. Supp. 2d 798, 807 n.5 (E.D. Pa. 2011) (same); Fazio v. Guardian Life
Ins. Co. of Am., --- A.3d ----, No. 1240 WDA 2011, 2012 WL 6177271, at *9 (Pa. Super. Ct.
Dec. 12, 2012) (concluding that the trial court's "jury instruction regarding 'misleading' conduct

UTPCPL, plaintiff must satisfy three elements.  See Seldon v. Home Loan Serv., Inc., 647 F.

Supp. 2d 451, 470 (E.D. Pa. 2009); see also, Weinberg v. Sun Co., 777 A.2d 442, 446 (Pa. 2001).

First, he must establish that defendant made a misrepresentation or engaged in deceptive conduct

– conduct that is likely to deceive a consumer acting reasonably under similar circumstances.

Seldon, 647 F. Supp. 2d at 470 (citations omitted).  Applicable here, under regulations governing

automobile trade practices established pursuant to the UTPCPL, it is a violation of the UTPCPL

for an automobile dealer to

> [make] a representation or statement of a fact in an advertisement
> or sales presentation if the advertiser or salesperson knows or
> should know that the representation or statement is false and
> misleading or if the advertiser or salesperson does not have
> sufficient information upon which a reasonable belief in the truth
> of the representation could be based.

37 Pa. Code. § 301.2(6).  Next, plaintiff must show that he justifiably relied on defendant's

misrepresentation or deceptive conduct.  Seldon, 647 F. Supp. 2d at 470.  To properly allege

justifiable reliance, plaintiff must show that defendant's misrepresentation or deception induced

him to purchase the Optima.  Hunt v. U.S. Tobacco Co., 538 F.3d 217, 227 (3d Cir. 2008).

Finally, plaintiff must establish that he was damaged by his justifiable reliance on defendant's

alleged misrepresentation or deceptive conduct.  Seldon, 647 F. Supp. 2d. at 470.

Plaintiff contends that "there is no dispute that [defendant] represented that the subject

vehicle had 'low mileage' of '33,609' in its advertisement for the car . . . and that [plaintiff]

relied on this in choosing to purchase this Optima over a later model 2006 vehicle."  Dkt. No. 11

at ECF p. 17.  He asserts that defendant made a false or misleading affirmative representation

---

accurately set forth the standard of liability under the [UTPCPL's] amended catchall provision").

when it signed an odometer disclosure statement on which it represented "that there was no 'odometer discrepancy' when there was" a discrepancy based on the Optima's title history and when defendant informed him "that the delay in titling was the result of a mere 'typo' when in reality PennDOT repeatedly rejected [defendant's] applications due to several higher-mileage titles in [PennDOT's] own records." Dkt. No. 27 at ECF p. 25.

Halloran's testimony that she saw a CarFax report flagging the Optima as having a potential odometer discrepancy prior to plaintiff's purchase of the vehicle combined with the dispute between the parties as to whether or not Halloran disclosed this information to plaintiff provide sufficient grounds for presenting plaintiff's UTPCPL claim to a jury. Genuine issues of material fact remain as to whether defendant's representation on the odometer statement was inaccurate or misleading and, if it was, whether plaintiff justifiably relied on the misrepresentation and suffered damages as a result thereof so as to establish defendant's violation of the UTPCPL. Accordingly, I will deny defendant's motion for summary judgment on plaintiff's claims under the UTPCPL.

## C.    Breach of Warranty

Express warranties are created by a seller, through "[a]ny affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain." 13 Pa. Cons. Stat. § 2313(a)(1). In his claim for breach of warranty, plaintiff asserts that "[t]he representations made by the figures on the odometer itself and by the odometer disclosure statement . . . that the Optima had been driven 33,609 miles, and the representations by the advertisement and by Kia that the automobile had 'low mileage' were each affirmations of fact or promises which became part of the basis of" plaintiff and defendant's agreement. Dkt.

No. 1 at ¶ 50.  He contends that "[t]hose representations were not true" and, as a result, "[d]efendant breached its express warranties to [p]laintiff."  Id. ¶ 51.  Defendant moves for summary judgment on plaintiff's breach of warranty claim arguing that plaintiff has not set forth sufficient evidence to show that the Optima's mileage was actually something other than 33,609 miles when plaintiff purchased the vehicle.  Dkt. No. 24 at ECF p. 11.

Defendant's expert contends that "there was no rollback" and that the mileage discrepancies in the Optima's chain of title are the result of a series of "honest mistake[s]."  Dkt. No. 24-3 at ECF p. 19.  If true, the odometer reading of 33,600 miles at the time of the Optima's purchase would have been accurate.  Plaintiff's expert counters that the Optima could have been driven a distance of 55,187 miles between its wholesale date on October 22, 2003 and February 2, 2005, the first date that PennDOT recorded mileage for the vehicle.  Dkt. No. 27-24 at ECF p. 4.  If the Optima actually had a mileage of over 55,000 miles when Bivens purchased the vehicle, the odometer reading of 33,600 miles at the time of the Optima's purchase would have been inaccurate.  In view of the evidence now before me, I find that a genuine issue of material fact remains as to whether the Optima's mileage at the time of plaintiff's purchase was in fact 33,609 miles.  Accordingly, I will deny defendant's motion for summary judgment with respect to plaintiff's claim for breach of warranty.

**V.     Motion for Leave to Amend to Assert a Claim for Fraud**

Plaintiff seeks to amend his complaint to assert a claim for common law fraud.  In his proposed amended complaint, plaintiff asserts that "[u]nbeknownst to [him] the Defendant obtained a Carfax vehicle history report on December 9, 2008, a month before selling the Optima to Plaintiff.  That Carfax report reflected prior titles with over 55,000 miles and a later title at

33,598.  The Carfax report also contained an odometer discrepancy indicator data flag." Dkt. No. 18-1 at ¶ 17 (emphasis in original).  He also contends that "[a]t 5:53 p.m. on January 7, 2009, mere hours before selling the car to Plaintiff, Defendant's salesperson [Halloran] pulled another Carfax on the Optima.  Like the December 9th Carfax pulled by the dealership, the report indicated an odometer discrepancy," Id. at ¶ 19 (emphasis in original).  His proposed amended complaint alleges that "[d]espite actual knowledge of the odometer discrepancy, neither [Halloran] nor any other of Defendant's representatives, told plaintiff of the negative Carfax or the reported odometer discrepancy.  Instead, Defendant withheld these material facts from Plaintiff to make a sale."  Id. at ¶ 20.  He further alleges that even after he purchased the Optima, defendant "continued to hide its knowledge of the negative Carfax reflecting the odometer discrepancy from Plaintiff," id. at ¶ 34, and that defendant misrepresented to him that there was a delay in receiving the Optima's registration as "the result of a 'typo.'"  Id. at ¶ 35.  Plaintiff alleges that he first learned of the odometer discrepancy in June 2011, when he claims he first obtained a CarFax report for the Optima.  Id. at ¶ 37.

Plaintiff's proposed fraud claim contends that "[d]efendant made material misrepresentations that there was no odometer discrepancy on the Optima vehicle," that "[d]efendant made material omissions by not disclosing to Plaintiff that there was an odometer discrepancy and a negative Carfax on the Optima vehicle," id. at ¶ 63, and that "[d]efendant's material misrepresentations and omissions were made with scienter and actual knowledge of these material facts, and made with the intent to induce Plaintiff into purchasing a vehicle under false pretenses."  Id. ¶ 64.  Finally, plaintiff claims that he "justifiably relied on Defendant's material misrepresentations and omissions and has been damaged as a proximate result."  Id. ¶

65.

"[T]he grant or denial of an opportunity to amend is within the discretion of the District Court." Foman v. Davis, 371 U.S. 178, 182 (1962). Rule 15(a) mandates that "[t]he court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). However, leave to amend may be denied where there is "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." Foman, 371 U.S. at 182. Defendant opposes plaintiff's motion to amend on the grounds that plaintiff's fraud claim is time-barred and further contends that the motion was unduly delayed, is not based on new evidence and is not the result of bad faith or dilatory conduct on the part of defendant.

## 1.    Plaintiff's Proposed Claim is Not Clearly Barred by the Statute of Limitations

First, I find that the statute of limitations does not render futile plaintiff's proposed amendment. Claims for fraud under Pennsylvania are subject to a two-year statute of limitations. 42 Pa. Cons. Stat. Ann. § 5524(7). Defendant contends that the limitations period for plaintiff's proposed fraud claim began to run on January 7, 2009, the date of the sale of the Optima, and thus "expired on January 7, 2011, roughly one year prior to plaintiff's original complaint." Dkt. No. 19 at ECF p. 7. Plaintiff counters that the statute of limitations on his fraud claim did not begin to accrue until June 2011, when he first purchased a Carfax for the Optima and became aware of the potential odometer discrepancy. Dkt. No. 18-1 at ¶ 37.

Pennsylvania courts have applied the discovery rule to toll the statute of limitations

where, despite the exercise of due diligence, a plaintiff could not reasonably have discovered his

injury or its cause.  Knopick v. Connelly, 639 F.3d 600, 607 (3d Cir. 2011) (citations omitted).

Under the discovery rule, the two-year limitations period for the fraud claim that plaintiff now

seeks to add to his complaint began to run when he knew or in the exercise of reasonable

diligence should have known of defendant's alleged fraudulent conduct.  Id.

> "The point of time at which the injured party should reasonably be
> aware that he or she has suffered an injury is generally an issue of
> fact to be determined by the jury.  Only where the facts are so clear
> that reasonable minds cannot differ may the commencement of the
> limitation period be determined as a matter of law."

Atl. Pier Assocs., LLC v. Boardakan Rest. Partners, L.P., No. 08-4564, 2011 WL 3268129, at *4

(E.D. Pa. July 29, 2011), quoting Sadtler v. Jackson-Cross Co., 587 A.2d 727, 732 (Pa. Super.

Ct. 1991).

Viewing the allegations in the proposed amended complaint in the light most favorable to

plaintiff – allegations that do not include an assertion that plaintiff received a copy of the CarFax

report from Halloran on the date that he purchased the Optima[5] – the statute of limitations for

Plaintiff's fraud claim against defendant was tolled until June 2011 when he claims he first saw a

CarFax indicating that the Optima had a potential odometer discrepancy.  Because of defendant's

assurances that the Optima had low mileage and that the delay in titling the vehicle was due to a

typo, plaintiff had no reason to discover the existence of the CarFax report prior to June 2011,

even though, as defendant contends, plaintiff "had ample opportunity to obtain a Carfax report on

---

[5]     From the facts before me on defendant's motion for summary judgment, there is a
clear dispute as to when plaintiff first had notice that CarFax records flagged the Optima as
having a possible odometer discrepancy.

January 7, 2009."[6]  Dkt. No. 19 at ECF p. 7.  Accordingly, I find that the statute of limitations does not render futile plaintiff's proposed claim for fraud.

### 2.     Justice Requires that Leave to Amend Be Granted

Plaintiff has not unduly delayed in seeking to amend his complaint.  "Whether delay is undue depends on the facts and circumstances of the case."  Nat'l Recovery Agency, Inc. v. AIG Domestic Claims, Inc., No. 05-0033, 2006 WL 1289545, at *4 (M.D. Pa. May 9, 2006).  In considering whether to deny plaintiff's motion to amend on the basis of undue delay, I must "'focus on the plaintiff's motives for not amending [his] complaint to assert this claim earlier.'"  Lindquist v. Buckingham Twp., 106 F. App'x 768, 775 (3d Cir. 2004), quoting Adams v. Gould, Inc., 739 F.2d 858, 868 (3d Cir. 1984).  I must do so while "bearing in mind the liberal pleading philosophy of the federal rules."  Cureton v. Nat'l Collegiate Athletic Ass'n, 252 F.3d 267, 273 (3d Cir. 2001).  Plaintiff avers that he "was reluctant to plead fraud absent evidence in hand."  Dkt. No. 21 at ECF p. 3.  He contends that "after learning of the odometer discrepancy in June 2011, [he] suspected that [defendant] knew about the negative CarFax prior to sale but was only able to obtain support for this through discovery."  Id.  He asserts that he sought to amend his complaint "only one (1) week after [defendant] admitted that it obtained the CarFax vehicle history report reflecting the odometer discrepancy before selling the car to Sacks.  This provides the element of knowledge or scienter for allegations of fraud."  Dkt. No. 18 at ECF p. 6.  In light of plaintiff's plausible claim that he did not have sufficient support to assert a fraud claim until he had discovery of Halloran and the CarFax witnesses, I decline to find that plaintiff has

---

[6]     Just as I decline to find that car dealers have a broad duty to review CarFax reports for the vehicles they sell, see supra n.3, I likewise decline to find that car purchasers have a duty to review CarFax reports at the time of purchase for vehicles they intend to purchase.

engaged in undue delay or dilatory tactics.

Likewise, "[c]omplication of the issues alone does not justify denying plaintiffs' motion for leave to amend." Biskas v. Clyde Seaways, S.A., No. 90-2316, 1991 WL 59950, at *1 (E.D. Pa. Apr. 10, 1991). "Even when a proposed amended complaint adds substantive allegations against a defendant . . . where '[t]he evidence required to meet these new allegations is substantially similar to that which was originally required,' prejudice does not exist." Synthes, Inc. v. Marotta, 281 F.R.D. 217, 228 (E.D. Pa. 2012), quoting Pegasus Int'l, Inc. v. Crescent Mfg. Co., No. 06-2943, 2007 WL 1030457, at *5 (E.D. Pa. Apr. 2, 2007) (further citations omitted). I find that defendant has not met its burden to establish that it will be unfairly prejudiced by the addition of plaintiff's fraud claim, a claim which arises out of the same occurrence as plaintiff's other claims against defendant. See Synthes, 218 F.R.D. at 228 ("Ultimately, the non-moving party bears the burden of demonstrating prejudice."). The discovery deadlines in this matter will be amended to allow the parties to have sufficient time to complete any discovery relevant to plaintiff's fraud claim.

Finding no undue delay by plaintiff or prejudice to defendants, I find that justice requires that I grant plaintiff's motion for leave to amend.

An appropriate Order follows.

-28-